[Cite as *State v. Scott*, 2013-Ohio-4599.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99524**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES SCOTT, III

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564740

**BEFORE:**   McCormack, J., E.A. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   October 17, 2013

**ATTORNEYS FOR APPELLANT**

Robert Tobik
Cuyahoga County Public Defender

By: Michael V. Heffernan
Assistant Public Defender
310 West Lakeside Avenue
Suite 200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Denise J. Salerno
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Charles Scott, III ("Scott"), appeals his conviction for two counts of failure to comply. He argues: (1) there was insufficient evidence from which to convict him; (2) the trial court erred in failing to give the requested lesser included jury instructions and in failing to separately instruct the jury on the two counts of failure to comply; and (3) the verdict is inconsistent. After a thorough review of the record, we affirm Scott's convictions.

**Procedural History and Substantive Facts**

{¶2} On July 24, 2012, Scott was indicted as follows: (1) Counts 1 and 2 — felonious assault in violation of R.C. 2903.11(A)(2); (2) Count 3 — failure to comply in violation of R.C. 2921.331(B), with a furthermore specification that the operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property; (3) Count 4 — failure to comply in violation of R.C. 2921.331(B), with a furthermore specification that he was fleeing immediately after the commission of a felony; (4) Count 5 — criminal damaging or endangering in violation of R.C. 2909.06(A)(1); and (5) Count 6 — criminal trespass in violation of R.C. 2911.21(A)(1).

{¶3} A jury trial commenced on September 24, 2012. The jury found Scott not guilty of the two counts of felonious assault and the criminal trespass in Counts 1, 2, and 6, respectively. It found Scott guilty of the criminal damaging in Count 5, failure to

comply in Counts 3 and 4, and the furthermore specification in Count 3 of causing a substantial risk of serious physical harm. The jury, however, found Scott not guilty of the furthermore specification of fleeing immediately after the commission of a felony in Count 4. The court imposed a sentence of 12 months imprisonment. Scott's appeal follows.

{¶4} Scott's convictions stem from an incident that occurred on the evening of July 15, 2012. Michael Sullivan, Brittney Bond, and Lori Kastak testified as to events that occurred at Kastak's residence on Southwood Drive in Brooklyn, Ohio on the evening in question. Scott was visiting with his girlfriend, Brittney Bond, at her mother's home, when an alleged altercation took place between Scott and Michael Sullivan, the alleged victim of the felonious assault charges. Sullivan, who is the boyfriend of Lori Kastak, the owner of the home, resides with Kastak.

{¶5} Sullivan testified that after he arrived home, Scott began to jump on Sullivan's car, which was parked in the driveway, while saying "he was going to kill me." Sullivan then called 911 to report what Scott was doing. The jury convicted Scott of criminal damaging or endangering for damage done to Sullivan's vehicle. Sullivan also testified that Scott threw beer bottles at him and then attempted to run him over with his car. Scott was charged with two counts of felonious assault stemming from this incident, of which the jury found Scott not guilty. According to Sullivan, after he dove under a vehicle to get out of the way, Scott "took off [and] * * * we could hear a [police] chase going on in the neighborhood."

**{¶6}** This appeal concerns the events that transpired once Scott left Kastak's property, for which Scott was charged with the failure to comply in Counts 3 and 4. Officers Adam McQuaid, Joseph Bugaj, and Joe Traska testified at trial concerning Scott's failure to comply.

**{¶7}** Officer McQuaid testified that he was on Memphis Avenue when he got a call from dispatch to head to a house on Southwood Drive for a disturbance. Dispatch advised Officer McQuaid that the disturbance concerned a fight between two individuals, and one person, Scott, was in a car and was potentially fleeing the scene. Believing Scott was heading toward the highway, Officer McQuaid decided to drive toward Tiedeman Road. Thereafter, another call came from dispatch that indicated Scott was still on Southwood Drive, so Officer McQuaid headed in that direction.

**{¶8}** When Officer McQuaid arrived at the intersection of Biddulph Road and Southwood Drive, he received a call from another officer, Officer Traska. Officer Traska testified that he was on Southwood Drive and saw Scott pass him at a high rate of speed. Officer McQuaid then stopped at the intersection and waited for Scott's vehicle. He testified that he saw Scott "coming from my right to head north" at a high rate of speed. He activated his overhead lights before Scott reached the intersection. Officer McQuaid stated that Scott came northbound from Southwood Drive and went through the red light at Biddulph Road, which was in front of the officer, making no attempt to stop. At that time, he attempted to initiate a traffic stop. He continued to attempt to initiate a traffic stop after Scott passed through the intersection.

{¶9}  Officer McQuaid could not testify as to the exact speed with which Scott was traveling on Southwood Drive; however, he testified that his own "top speed" while traveling behind Scott was approximately 65 miles per hour.  The speed limit on Southwood Drive is 25 miles per hour.  Officer McQuaid followed Scott for approximately one-quarter of a mile until, ultimately, Scott could not navigate a right turn.  Officer McQuaid testified that he believed Scott was trying to get away from the police and he didn't know the road turned right.  Once Scott became aware that he could not navigate the turn, Officer McQuaid states that Scott hit his brakes and struck a road sign.  He then exited the vehicle and ran westbound on foot.  Officer McQuaid proceeded to chase Scott on foot through a residential neighborhood.  Officer McQuaid testified that his lights and siren were on during the entire chase.

{¶10}  Officer McQuaid's police cruiser is equipped with a dash cam, which recorded the chase.  The dash cam supported Officer McQuaid's testimony that he turned his lights on before Scott approached the intersection of Biddulph Road and Southwood Drive.  Officer McQuaid explained that the volume on the dash cam does not come on unless and until his lights are activated.  As the video played for the jury, the volume came on, reflecting that, before Scott approached the intersection, his lights were on. Officer McQuaid also noted that Officer Bugaj's sirens were audible on the video as Officer Bugaj headed in the direction of Officer McQuaid's pursuit.  The dash cam recorded Scott braking, leaving tire marks, exiting the vehicle, and running from the scene.

{¶11} Officer Bugaj also answered the disturbance call on July 15. He testified that he was traveling southbound on Southwood Drive and was about ten houses away from Biddulph Road when he saw Scott's vehicle heading in the opposite direction. He immediately turned around and turned his lights on. Officer Bugaj stated that Scott was traveling at a high rate of speed as he passed through the red light in the intersection. As Officer Bugaj traveled northbound on Southwood Drive, Officer McQuaid called out that Scott was running and he was engaged in a foot chase. Officer Bugaj was not far from the scene when he received Officer McQuaid's call. He stated that it was difficult to see what was transpiring due to Officer McQuaid's lights; however, when he arrived on the scene, he could see that Scott's door was open, the vehicle was running, and the vehicle was rested at the curb. Officer Bugaj proceeded to give chase as well.

{¶12} Officers McQuaid and Bugaj both testified that Scott was combative and verbally abusive during his arrest. Officer Bugaj inventoried the vehicle and took photographs. He testified that the car that was rested at the curb was the same vehicle that had passed him earlier at a high rate of speed.

### Assignments of Error

I. The evidence presented in Counts 3 and 4 is insufficient to prove Scott guilty beyond a reasonable doubt, where Scott was acquitted of the underlying felony charges, where the furthermore specification in Count 4 was not met and where the crimes charged in Counts 3 and 4 were felony charges themselves.

II. The trial court erred in failing to give the requested lesser included instruction and failing to separately instruct the jury on Counts 3 and 4 to the jury.

III. The inconsistent verdict requires reversal.

## Sufficiency of the Evidence

{¶13} Under his first assignment of error, Scott claims that his conviction for failure to comply in Counts 3 and 4 and the furthermore specification of causing substantial risk of physical harm in Count 4 is not supported by sufficient evidence. We disagree.

{¶14} When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶15} A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.

{¶16} The failure to comply offense of which Scott was found guilty provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer

after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). The term "willfully" is synonymous with "purposely" or "intentionally":

> The term "willfully" is not defined in R.C. 2901.22, which is the statute that covers culpable mental states for criminal liability. However, the 1974 committee comments to R.C. 2901.22 state as follows: "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct. 'Purposely' in the new code equates with 'purposely,' 'intentionally,' 'willfully,' or 'deliberately' in the former law."

*State v. Roberts*, 8th Dist. Cuyahoga No. 91086, 2009-Ohio-5750, ¶ 8; *State v. Cole*, 3d Dist. Seneca No. 13-10-30, 2011-Ohio-409, ¶ 22. Generally, the intent of a person cannot be proven by direct evidence; therefore, proof of intent may be demonstrated through circumstantial evidence. *Cole* at ¶ 23, citing *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

**{¶17}** Scott was also found guilty of the furthermore clause specifying that through the operation of his motor vehicle, Scott "caused a substantial risk of serious physical harm to persons or property." *See* R.C. 2921.331(C)(5)(a)(ii).

**{¶18}** R.C. 2901.01(A)(8) defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

**{¶19}** In this case, Officer McQuaid testified that he saw Scott approaching the intersection at a high rate of speed. He then activated his lights and siren before Scott reached the intersection. Scott went through the red light at Biddulph Road, which was

in front of the officer, making no attempt to stop. Officer McQuaid testified that his own speed while traveling behind Scott was approximately 65 miles per hour in a 25-mile-per-hour zone. He followed Scott for approximately one-quarter of a mile until Scott could not navigate a right turn. Scott hit his brakes, struck a road sign, and stopped the vehicle. He then exited the vehicle and fled on foot through a residential neighborhood, where Officer McQuaid resumed the chase on foot. Officer McQuaid testified that his lights and siren were on during the entire chase.

{¶20} Officer Bugaj also testified that he observed Scott traveling at a high rate of speed as he ran the red light in the intersection. Officer Bugaj immediately turned around and turned his lights on and joined the pursuit. He testified that he observed Officer McQuaid's lights on when he discovered Scott's vehicle resting at the curb, with the engine running and the door open.

{¶21} Finally, Officer McQuaid's dash cam video supports his testimony that his lights were on before Scott approached the intersection. The video also captured Officer Bugaj's sirens, as Officer Bugaj headed in the direction of Officer McQuaid's pursuit. The dash cam further recorded Scott braking, leaving tire marks, exiting the vehicle, and running from the scene.

{¶22} After reviewing this evidence in a light most favorable to the state, we find that the state presented sufficient evidence to establish that Scott operated his car so as to willfully elude or flee a police officer after receiving a visible or audible signal to stop. Where the officers giving chase activated lights and sirens and began to follow Scott, who

traveled through a red light at a high rate of speed until abruptly stopping where he could not navigate the turn, we can infer that Scott acted willfully with respect to the charge of failure to comply. "'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *Lott*, 51 Ohio St.3d at 168, 555 N.E.2d 293 (1990), quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978); *State v. Garrard*, 170 Ohio App.3d 487, 2007-Ohio-1244, 867 N.E.2d 887 (10th Dist.) (holding that it could be inferred that the defendant acted willfully concerning a failure to comply charge where the police activated lights and siren and began to follow the defendant in his vehicle, the defendant continued to speed, and prolonged the police pursuit); *Roberts*, 8th Dist. Cuyahoga No. 91086, 2009-Ohio-5750 (holding that where defendant drove 50 m.p.h. in a 25 m.p.h. zone and drove through two stop signs and a red light, defendant's conviction for failure to comply was supported by sufficient evidence).

{¶23} Furthermore, we find that the evidence presented by the state, as outlined above, is sufficient to establish that Scott's operation of his motor vehicle while fleeing the police caused a substantial risk of serious physical harm to persons or property. By leading police on a chase, Scott created a strong possibility of injuring himself, the police chasing him, and other pedestrians or drivers on the road.

{¶24} Accordingly, we find sufficient evidence to support Scott's conviction, and his first assignment of error is overruled.

**Jury Instructions**

{¶25} In his second assignment of error, Scott contends that the trial court erred in not separately instructing the jury with respect to Counts 3 and 4 and in failing to give the requested lesser included instruction. Scott's proposed jury instruction is outlined in court's exhibit A and states as follows:

> GUILTY OF LESSER INCLUDED OFFENSE. * * * If you find that the state failed to prove beyond a reasonable doubt all the essential elements stated in the furthermore elements of Failure to Comply, then your verdict must be not guilty of that offense; and in that event, you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser included offense of Failure to Comply.

> EXPLAIN LESSER OFFENSE. The offense of Failure to Comply with visible or audible order of police officer is distinguished from the charges outline[d] in Counts 3 and 4 by the absence or failure to prove the furthermore specifications of (1) the defendant['s] operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property, and (2) that defendant was fleeing immediately after commission of a felony.

{¶26} It is unclear from Scott's proposed jury instruction or his brief exactly what lesser included jury instruction he sought to have included. Indeed, when defense counsel proposed the instruction as outlined above, the trial court stated, "I am not following you one bit." We cannot fault the trial court for not understanding what jury instruction Scott proposed.

{¶27} In this case, the trial court instructed the jury on failure to comply in Counts 3 and 4. The court then instructed the jury on the furthermore specifications contained in those counts:

> So this is count 3, further finding. If your verdict is guilty you must decide * * * whether the defendant's operation of a motor vehicle did or did not

cause a substantial risk of serious physical harm to person or property. If your verdict is not guilty, you will not make any further determination regarding this further finding.

* * *

So that was count 3's further finding. Now, this is count 4's.

If your verdict is guilty you must decide * * * whether the defendant was fleeing immediately after the commission of a felony. Felonious assault is a felony.

If your verdict is not guilty you will not make any further determination regarding this further finding.

{¶28} The court's instructions are appropriate and clear. If the jury determined that Scott was guilty of failure to comply, in either count, it could then decide whether Scott was guilty of the respective furthermore specification. If, however, the jury determined that Scott was not guilty of failure to comply, then it would not reach the respective issue presented in the furthermore specification. We find no error in these instructions.

{¶29} Furthermore, we do not find that the trial court failed to separately instruct the jury on failure to comply in Counts 3 and 4 or on the respective furthermore specifications. On the contrary, our review of the transcript revealed that the court repeatedly informed the jury that Counts 3 and 4 were separate offenses:

The defendant * * * is *charged separately* in count 3 and count 4 with failure to comply in violation of 2921.331(B). Before you can find the defendant guilty you must find * * * the defendant operated a motor vehicle so as * * * willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

* * *

If you find the state failed to prove beyond a reasonable doubt any one or more of the essential elements of the offense of failure to comply *as charged separately* in count 3 and/or count 4 of the indictment, your verdict must be not guilty according to your findings.

Count 3.  Now, remember, failure to comply is in count 3 and 4.  *They are the same base charge but there's a different furthermore for each count.* And so I'm now going to read to you the further findings that you may or may not have to deliberate on.  *So they are different for count 3 and count 4.  I just want to point that out to you.*

* * *

So that was count 3's further finding.   Now, this is count 4's.

* * *.

(Emphasis added.)

**{¶30}** Accordingly, the record reflects that the trial court did, in fact, charge the jury separately as indicted.  We, therefore, find no error in the court's jury instructions with respect to addressing the charges separately.    Moreover, Scott has failed to provide any evidence that he was prejudiced by the court's instructions as charged.

**{¶31}** Scott's second assignment of error is overruled.

### Inconsistent Verdict

**{¶32}** In his third assignment of error, Scott claims that the verdict is inconsistent. We find no merit to this argument.

**{¶33}** The jury found Scott not guilty of the felonious assault charges in Counts 1 and 2.   The jury also found Scott not guilty of the furthermore specification in Count 4 of fleeing immediately after the commission of a felony.   R.C. 2921.331(C)(4).   This

specification requires proof that an offender was fleeing after the commission of a felony. Because Scott was found not guilty of the felonious assault charges, the jury's verdict is consistent.

{¶34} Scott's third assignment of error is, therefore, overruled.

{¶35} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR