[Cite as *State v. Hersi*, 2018-Ohio-123.]

STATE OF OHIO           )                IN THE COURT OF APPEALS
                       )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA     )

STATE OF OHIO                     C.A. No.      17CA0021-M

     Appellee

     v.                           APPEAL FROM JUDGMENT
                                   ENTERED IN THE
JIBRIIL A. HERSI                COURT OF COMMON PLEAS
                                   COUNTY OF MEDINA, OHIO
     Appellant                CASE No.     16 CR 0126

DECISION AND JOURNAL ENTRY

Dated: January 16, 2018

TEODOSIO, Judge.

**{¶1}** Appellant, Jibriil A. Hersi, appeals from his convictions for failure to comply with an order or signal of a police officer and felonious assault in the Medina County Court of Common Pleas. We affirm.

I.

**{¶2}** In March of 2016, Mr. Hersi was driving his semi-truck and trailer westbound on Interstate 76. Inspector Richard Bell, a civilian working with the Ohio State Highway Patrol as a Federal Motor Carrier Officer in a marked vehicle, activated his lights and siren and attempted to stop Mr. Hersi's semi-truck for a safety inspection. According to Inspector Bell, when Mr. Hersi did not stop, the inspector twice pulled along the side of Mr. Hersi's semi-truck and continued to attempt to get him to pull his semi-truck over and stop. Mr. Hersi was talking on his phone and making eye contact with Inspector Bell, but shaking his head to indicate "no." Both times that Inspector Bell pulled along the side of the semi-truck, Mr. Hersi swerved toward the inspector,

causing him to apply his brakes and swerve to avoid the semi-truck. The second time, Inspector Bell swerved over the yellow line and onto the "rumble sticks." State Troopers soon joined the pursuit and Trooper Phillip Melicant pulled along the side of Mr. Hersi's semi-truck in an attempt to get him to pull over and stop. According to Trooper Melicant, Mr. Hersi swerved toward him as well. The entire pursuit lasted over a distance of seven-to-eight miles on two separate highways before Mr. Hersi finally stopped.

{¶3} Mr. Hersi was indicted on one count of failure to comply with an order or signal of a police officer where the operation of his motor vehicle caused a substantial risk of serious physical harm to persons or property, a felony of the third degree, and one count of felonious assault, a felony of the second degree. After a jury trial, he was found guilty of both counts and the trial court sentenced him to a total of three years in prison.

{¶4} Mr. Hersi now appeals from his convictions and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS JURY INSTRUCTION DEFINING THE ESSENTIAL ELEMENT OF "POLICE OFFICER" AS TO COUNT I, THE CHARGED OFFENSE OF FAILURE TO COMPLY WITH ORDER OR SIGNAL OF POLICE OFFICER IN VIOLATION OF R.C. 2921.331(B) (C)(5)(A)(ii), WHERE THE CIVILIN (SIC) MOTOR CARRIER ENFORCEMENT DIVISION SAFETY INSPECTOR WAS NOT A TRAINED "PEACE OFFICER" AND DID NOT MEET THE DEFINITION OF "POLICE OFFICER" UNDER R.C. 2921.331(F) AND R.C. 4511.01(Z).

{¶5} In his first assignment of error, Mr. Hersi argues that the trial court erred in providing a definition of "police officer" in its jury instructions without further advising the jury that Inspector Bell is not a trained peace officer or police officer. We disagree.

**{¶6}** "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶7}** Mr. Hersi argues that the trial court erred by defining "police officer" in its jury instructions and using language from R.C. 2921.331(F) and R.C. 4511.01(Z) without further advising the jury that Inspector Bell is a civilian employee who is not a trained "peace officer" and does not satisfy the definition of a "police officer." Over Mr. Hersi's objection, the trial court specifically defined "police officer" in its jury instructions as "every officer authorized to direct or regulate traffic, or to make arrests for violations of traffic regulations."

**{¶8}** Mr. Hersi was charged with failure to comply with an order or signal of a police officer under R.C. 2921.331(B), which states: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." For purposes of R.C. 2921.331, "police officer" has the same meaning as in R.C. 4511.01. R.C. 2921.331(F)(2). R.C. 4511.01(Z) defines "police officer" as "every officer authorized to direct or regulate traffic, or to make arrests for violations of traffic regulations."

{¶9} Mr. Hersi argues that, as a member of the Motor Carrier Enforcement Unit, Inspector Bell is simply a civilian safety inspector who is only authorized to conduct safety inspections and is not a trained "peace officer." However, nowhere in R.C. 2921.331(B) or the R.C. 4511.01(Z) definition of "police officer" is a requirement that the officer also be a trained peace officer. The officer need only be authorized "to direct or regulate traffic" or "to make arrests for violations of traffic regulations." R.C. 4511.01(Z). Here, Inspector Bell testified that, in his duties as a Federal Motor Carrier Enforcer, he is authorized by the Ohio State Highway Patrol and the Federal Motor Carrier Safety Administration to direct or regulate traffic and pull vehicles over, specifically "big vehicles" such as trucks and tractor-trailers. Sergeant Eleazar Rivera also testified that Inspector Bell has the ability and authority to regulate and direct traffic.

{¶10} Although the instructions found in the Ohio Jury Instructions are not mandatory, they are recommended instructions based primarily on case law and statutes. *State v. Schell*, 9th Dist. Summit No. 28255, 2017-Ohio-2641, ¶ 40. The definition of "police officer" provided under R.C. 4511.01(Z) and the definition the trial court used in its jury instructions are the same definition verbatim provided under Ohio Jury Instructions, CR Section 521.331, for failure to comply with an order or signal of a police officer. Because the trial court instructed the jury with a definition of "police officer" that tracked the standard language provided in the Ohio Jury Instructions verbatim, we conclude that it was a correct statement of law and that the trial court did not abuse its discretion or err when it provided the definition to the jury. *See Schell* at ¶ 40.

{¶11} Mr. Hersi's first assignment of error is overruled.

### ASSIGNMENT OF ERROR TWO

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE JURY VERDICTS OF "GUILTY" AS TO BOTH COUNT I, THE CHARGED OFFENSE OF FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF POLICE OFFICER, AND COUNT II, THE CHARGED OFFENSE OF FELONIOUS

ASSAULT, AND THE APPELLANT'S CONVICTIONS AS TO BOTH COUNTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} In his second assignment of error, Mr. Hersi argues that his convictions are based on insufficient evidence and against the manifest weight of the evidence. We disagree with both propositions.

<u>Sufficiency of the Evidence</u>

{¶13} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶14} Once again, Mr. Hersi was convicted of failure to comply with an order or signal of a police officer under R.C. 2921.331(B), which states: "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Although the term "willfully" is not defined as a culpable mental state for criminal liability under R.C. 2901.22, the 1974 committee comments to R.C. 2901.22 provide: "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of

what the offender intends to accomplish through that conduct. 'Purposely' in the new code equates with 'purposely,' 'intentionally,' '*willfully*,' or 'deliberately' in the former law." (Emphasis added.) Thus, "willfully" is synonymous with "purposely." *State v. Alexander*, 1st Dist. Hamilton No. C-160373, 2017 Ohio App. LEXIS 515, *3 (Feb. 15, 2017); *State v. Scott*, 8th Dist. Cuyahoga No. 99524, 2013-Ohio-4599, ¶ 16. "'Police officer' means every officer authorized to direct or regulate traffic, or to make arrests for violations of traffic regulations." R.C. 4511.01(Z).

**{¶15}** Mr. Hersi argues that the State failed to establish that Inspector Bell was a police officer for purposes of R.C. 2921.331(B) because he is only a civilian employee authorized to conduct safety inspections of commercial vehicles, but is not a trained peace officer who is authorized to issue speeding tickets or investigate operating a vehicle while intoxicated ("OVI") cases. However, as stated above in our discussion of Mr. Hersi's first assignment of error, neither R.C. 2921.331(B) nor R.C. 4511.01(Z) require the police officer to also be a trained peace officer authorized to issue speeding tickets or investigate OVI cases. The officer need only be authorized "to direct or regulate traffic" or "to make arrests for violations of traffic regulations." R.C. 4511.01(Z). At trial, Inspector Bell and Sergeant Rivera both testified that Inspector Bell is authorized to direct and regulate traffic as part of his duties working as a Federal Motor Carrier Enforcer with the Ohio State Highway Patrol.

**{¶16}** Mr. Hersi also argues that the State failed to establish that he acted willfully because he testified at trial that he did not willfully elude or flee, and his testimony demonstrated that he was instead confused as to whether Inspector Bell was attempting to pull his semi-truck over. However, in addressing a sufficiency challenge, we will not attempt to resolve evidentiary

conflicts between Mr. Hersi's testimony and testimony of the officers in this case, as that function belongs to the trier of fact. *See Hall* at ¶ 10.

**{¶17}** Here, the State presented evidence at trial, if believed, that established Mr. Hersi willfully eluded or fled police officers after receiving multiple visible and audible signals from Inspector Bell and Trooper Melicant to stop his semi-truck over a span of approximately seven-to-eight miles on two highways. While parked off of Interstate 76 and talking with Troopers Phillip Melicant and Matt Mossor on March 6, 2016, Inspector Bell testified that he used uniform statistics and randomly selected a semi-truck that passed by the parked officers. He activated his siren and overhead lights and attempted to pull the semi-truck over before it reached the upcoming weigh station, so he could then direct the semi-truck into the weigh station and perform a safety inspection. Mr. Hersi was the driver of the randomly-selected semi-truck. Inspector Bell testified that when Mr. Hersi did not pull over, he pulled along the side of Mr. Hersi's semi-truck, varied his siren sounds, and attempted to get Mr. Hersi's attention by motioning to him to pull his semi-truck over to the side of the road. Mr. Hersi was on the phone, but looked down at Inspector Bell, made eye contact with him, and then swerved his semi-truck into Inspector Bell's lane of travel, causing the inspector to apply his brakes. When questioned on cross-examination as to whether the swerve could have been a mistake, Inspector Bell testified that Mr. Hersi "didn't mistakenly turn his steering wheel." Mr. Hersi then swerved his semi-truck back into his original lane of travel.

**{¶18}** Inspector Bell pulled along the side of Mr. Hersi's semi-truck a second time and continued to motion to Mr. Hersi to pull over. Mr. Hersi was still on the phone and said something to Inspector Bell while making eye contact with him and shaking his head to indicate "no." Inspector Bell testified that Mr. Hersi's semi-truck then swerved into the inspector's lane

once again, even more than the first time, causing the inspector to "slam" on his brakes hard and swerve over the yellow line on the road and onto the "rumble sticks." Inspector Bell announced over the radio that the semi-truck driver failed to pull over and also tried to run him off the road.

{¶19} After traveling approximately six miles on Interstate 76 without stopping for Inspector Bell, Mr. Hersi turned onto Interstate 71. Trooper Melicant passed Inspector Bell around this time and then took the lead in the pursuit for another two miles. Trooper Mossor also testified that the entire incident took place over a span of approximately seven-to-eight miles. Trooper Melicant testified that he pulled up along the side of Mr. Hersi's semi-truck and motioned to him to pull over. He testified, "At that time, I could clearly see up in the cab that Mr. Hersi was shaking his fist at me and yelling, and all of a sudden, that's when he swerved at me * * *." When asked if he felt the swerve was done on purpose, Trooper Melicant testified, "He absolutely did it on purpose." The trooper testified that had he not made an evasive action, Mr. Hersi's semi-truck would have hit him. Inspector Bell also testified that he observed Mr. Hersi's semi-truck swerve toward Trooper Melicant. The trooper testified that Mr. Hersi's semi-truck "rode the berm" for about one more mile before eventually stopping.

{¶20} Mr. Hersi's written statement to the State Highway Patrol was also entered into evidence at trial. In his written statement, Mr. Hersi states that he first saw Inspector Bell at the weigh station and did not stop for him because he felt it was discrimination. He admits that he saw the overhead lights, but states that he was "set up" and it was unfair if they were looking for stolen vehicles or "highway [terrorism]." He further admits that he did not acknowledge the officers by stopping right away. He states that after he saw the overhead lights, he traveled less than three miles down the road. He admits that he was on the phone with his family telling them

that three officers were parked and one followed him after passing three other trucks. He also states that he has been stopped for safety inspections many times in the past.

{¶21} Mr. Hersi's failure to comply conviction was elevated to a felony of the third degree because the jury found beyond a reasonable doubt that his operation of the semi-truck caused a substantial risk of serious physical harm to persons or property. *See* R.C. 2921.331(C)(5)(a)(ii). A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "Serious physical harm to persons" means any of the following:

> Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> Any physical harm that carries a substantial risk of death;
>
> Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). "Serious physical harm to property" includes "any physical harm to property that * * * [r]esults in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace [or t]emporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(6).

{¶22} Mr. Hersi argues that the State failed to prove his operation of the semi-truck caused a substantial risk of serious physical harm to persons or property because the first swerve toward Inspector Bell was likely an accident and it is not even physically possible to abruptly

swerve a semi-truck into another lane. He further argues that Inspector Bell acknowledged that the wind could blow an empty trailer sideways, and a dash cam video that was entered into evidence does not show Mr. Hersi swerving toward Trooper Melicant.

{¶23} Whether Mr. Hersi's swerve was accidental or intentional is irrelevant here because "R.C. 2921.331(C)(5)(a)(ii) is not an element that has a specified culpable mental state." *State v. Fairbanks*, 117 Ohio St.3d 543, 2008-Ohio-1470, ¶ 11. "Instead, the penalty enhancement is contingent upon a factual finding with respect to *the result or consequence* of the defendant's willful conduct. Whether the result or consequence was intended by the defendant is of no import." (Emphasis sic.) *Id.* Moreover, we find no merit in Mr. Hersi's unsupported assertion that it is physically impossible to swerve a semi-truck into another lane of travel.

{¶24} At trial, the State presented evidence, if believed, that established Mr. Hersi's operation of the semi-truck caused a substantial risk of serious physical harm to persons or property. Several officers testified that Mr. Hersi continued to drive without stopping for a span of seven-to-eight miles on two different highways. Inspector Bell did testify at trial that the wind or weather could possibly move a semi-truck's empty trailer, but he testified that Mr. Hersi swerved toward him on two different occasions, causing him to apply his brakes to avoid an accident both times. The second swerve caused Inspector Bell to swerve over the yellow line and onto the "rumble sticks" on the side of the road. Inspector Bell testified that if he had not applied his brakes and swerved away, the two vehicles would have made contact and crashed. He testified that all of Mr. Hersi's semi-truck, except for the right-side wheels, came into the inspector's lane before Mr. Hersi swerved back into his original lane. Trooper Melicant also testified that had he not made his own evasive action when Mr. Hersi later swerved toward him, Mr. Hersi's semi-truck would have hit him.

{¶25} In Trooper Melicant's dash cam video, he can be heard saying, "Pull over, pull over" while next to Mr. Hersi's semi-truck. The trooper's vehicle then veers slightly to the left and he can be heard saying, "Medina, he's trying to cut me off as well." Trooper Mossor joined the pursuit behind both Trooper Melicant and Inspector Bell, and Trooper Mossor's dash cam video was also entered into evidence. Although not entirely conclusive and unfortunately recorded from a substantial distance by a vehicle that is attempting to catch up to the pursuit, Mr. Hersi's semi-truck appears in the video to slightly veer toward Trooper Melicant's vehicle before abruptly swerving away from the trooper. Trooper Melicant veers slightly to the left and can then be heard announcing over the radio that Mr. Hersi is trying to cut him off as well.

{¶26} Mr. Hersi was also convicted of felonious assault, under R.C. 2903.11(A)(2), which states: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and * * * specially adapted for use as a weapon, or * * * used as a weapon." R.C. 2923.11(A). "An automobile is a deadly weapon when a driver attempts to run over someone." *State v. Jaynes*, 9th Dist. Summit No. 20937, 2002-Ohio-4527, ¶ 12.

{¶27} At trial, the State presented evidence, if believed, that established Mr. Hersi knowingly attempted to cause physical harm to Inspector Bell by means of a deadly weapon. Once again, Inspector Bell testified that Mr. Hersi made eye contact with him and swerved his semi-truck into the inspector's lane of travel twice, and the second time caused the inspector to

swerve his own vehicle over the yellow line and onto the "rumble sticks" on the side of the road. He testified that Mr. Hersi "didn't mistakenly turn his steering wheel" and had the inspector not swerved away, the vehicles would have made contact and crashed. The second time, Mr. Hersi again made eye contact with Inspector Bell, then said something to him and shook his head to indicate "no." Mr. Hersi swerved toward Inspector Bell once again, causing the inspector to "slam" on his brakes and drive over the yellow line and onto the "rumble sticks."

{¶28} After reviewing the evidence presented at trial in a light most favorable to the prosecution, we conclude that the State satisfied its burden of production and presented sufficient evidence that Mr. Hersi committed the offense of failure to comply with an order or signal of a police officer, which caused a substantial risk of serious physical harm to persons or property, and committed the offense of felonious assault. Given the substantial length of the pursuit and the fact that it occurred at highway speeds and included several people and vehicles that could have been involved in serious or even fatal accidents due to Mr. Hersi's actions, we conclude that any rational trier of fact could have found all of the essential elements of the above offenses proven beyond a reasonable doubt.

Manifest Weight of the Evidence

{¶29} This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony."

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶30}** Mr. Hersi claims that his convictions are against the manifest weight of the evidence, but he does not present or develop any meaningful argument in support of his claim. He only summarily states that even assuming arguendo the evidence presented at trial was somehow sufficient, an independent re-weighing of that same evidence demonstrates the evidence weighs heavily against conviction. "[S]ufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Hersi has not challenged the evidence set forth by the State as "unreliable or lacking credibility." *See State v. Smith*, 9th Dist. Summit No. 27877, 2016-Ohio-7278, ¶ 16. Accordingly, this Court will not develop a manifest weight argument on his behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32.

**{¶31}** Mr. Hersi's second assignment of error is overruled.

III.

**{¶32}** Mr. Hersi's first and second assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.