[Cite as *State v. Clemmons*, 2023-Ohio-4312.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                                         No. 112432

    v.                          :

RYAN CLEMMONS, SR.,                     :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 30, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656773-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lindsay Patton, Assistant Prosecuting Attorney, *for appellee.*

Brian Kraft, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Ryan Clemmons, Sr. appeals the consecutive sentences the trial court imposed on him in four criminal cases, resulting in an aggregate indefinite sentence of 12 to 16 years in prison. Clemmons contends that

the sentences are disproportionate to the seriousness of his offenses.  For the reasons that follow, we affirm.

## I.    Factual Background and Procedural History

{¶ 2} Clemmons has not had a valid driver's license since 2013.

{¶ 3} In March 2020, University Circle police conducted a traffic stop of a vehicle that Clemmons was driving.  Police found illegal drugs including methamphetamine in the vehicle.

{¶ 4} In August 2020, Cleveland police found an empty vehicle idling with its engine on; they found illegal drugs and items indicative of drug trafficking in the vehicle.  Clemmons arrived at the scene and admitted that he had been operating the vehicle.

{¶ 5} On January 30, 2021, Clemmons was driving in East Cleveland with a loaded firearm under his seat when police attempted to initiate a traffic stop of his vehicle.  Clemmons fled in the vehicle.  Clemmons' friend Shawn Crenshaw was a passenger in the vehicle when Clemmons fled.  The police pursued Clemmons into Cleveland; the pursuit reached speeds of up to 90 miles per hour.  Clemmons eventually lost control of the vehicle and crashed into a tree, killing Crenshaw.  Crenshaw was 27 years old when he died.  Police rescued Clemmons from the vehicle, which had caught fire after the crash.

{¶ 6} Clemmons was arrested at that time.  He was released on bond in February 2021.

{¶ 7} On March 10, 2021, Clemmons was cited by police in Newton Falls, Ohio for driving at 88 miles per hour on a road with a speed limit of 70 m.p.h.

{¶ 8} On April 13, 2021, Clemmons was driving a vehicle in Cleveland. Cleveland police conducted a traffic stop and asked Clemmons to step out of the vehicle. Clemmons stepped out, reaching into his pockets and discarding items onto the road. Among other things, he discarded a tablet containing methamphetamine.

{¶ 9} On April 20, 2021, Clemmons was cited by Cleveland police again for driving under a suspended license.

{¶ 10} On May 11, 2021, a Cuyahoga County Grand Jury indicted Clemmons on charges of involuntary manslaughter, aggravated vehicular homicide, failure to comply, having weapons while under disability and improperly handling firearms in a motor vehicle stemming from the January pursuit and Crenshaw's death.[1]

{¶ 11} Clemmons ultimately pleaded guilty to aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) (a second-degree felony), failure to comply in violation of R.C. 2921.331(B) (a third-degree felony), one count of having weapons while under disability in violation of R.C. 2923.13(A)(3) (a third-degree felony) and improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) (a fourth-degree felony). The remaining charges were dismissed through a nolle prosequi.[2]

---

[1] Cuyahoga C.P. No. CR-21-656773-A

[2] The trial court's original journal entry from the plea hearing erroneously stated that Clemmons pleaded guilty to involuntary manslaughter; the error was corrected on January 25, 2023 through a nunc pro tunc entry. Although the January 25 entry was not

{¶ 12} On June 17, 2021, a Cuyahoga County Grand Jury indicted Clemmons on charges of tampering with evidence and possession of methamphetamine stemming from the April traffic stop.[3] Clemmons ultimately pleaded guilty to attempted tampering with evidence in violation of R.C. 2923.02 and 2921.12(A)(1) (a fourth-degree felony) and possession of methamphetamine in violation of R.C. 2925.11A (a fifth-degree felony).

{¶ 13} On June 22, 2021, a Cuyahoga County Grand Jury indicted Clemmons on charges including trafficking methamphetamine, stemming from the August 2020 encounter with police. Clemmons ultimately pleaded guilty to one count of trafficking methamphetamine in violation of R.C. 2925.03(A)(2) (a fourth-degree felony) with forfeiture specifications.[4] The remaining charges were dismissed through a nolle prosequi.

{¶ 14} On June 26, 2021, Clemmons posted a video on Instagram that the state said showed him driving on a highway late at night. Clemmons said he was getting a ride home from work and was not driving.

{¶ 15} On October 18, 2022, a Cuyahoga County Grand Jury indicted Clemmons on charges of drug trafficking and drug possession for the March 2020 University Circle traffic stop.[5] Clemmons ultimately pleaded guilty to attempted

---

captioned "nunc pro tunc," an entry on January 26, 2023 clearly states that the January 25 entry was the corrected journal entry for the November 2022 plea hearing.

[3] Cuyahoga C.P. No. CR-21-660490-A.

[4] Cuyahoga C.P. No. CR-21-660510-A.

[5] Cuyahoga C.P. No. CR-22-675242-A.

drug possession in violation of R.C. 2923.02 and 2925.11(A) (a fourth-degree felony) with forfeiture specifications and two counts of drug possession in violation of R.C. 2925.11(A) (each a fifth-degree felony). The remaining counts were dismissed through a nolle prosequi.

{¶ 16} As of November 2022, Clemmons had four pending criminal cases: (1) the methamphetamine-trafficking case from the August 2020 encounter,[6] (2) the aggravated-vehicular-homicide case from the January 2021 pursuit and crash, (3) the methamphetamine-possession case from the April 2021 traffic stop and (4) the methamphetamine-possession case from the March 2020 traffic stop. The trial court accepted Clemmons' guilty pleas in each of these cases, as identified in the paragraphs above, on November 28, 2022.

{¶ 17} On November 28, 2022, Clemmons pleaded guilty in each case as described above. The trial court ordered a presentence-investigation report and the defense filed a sentencing memorandum and letters written in support of the defendant by eight of his relatives.

{¶ 18} On January 26, 2023, the trial court held a hearing in which it sentenced Clemmons in each of these cases. The state, defense counsel, two of Crenshaw's relatives and Clemmons addressed the court.

{¶ 19} The state recommended a ten-year sentence in the aggravated-vehicular-homicide case, calling Clemmons "an individual who is either fully unable

---

[6] Cuyahoga C.P. No. CR-21-660510-A.

or entirely unwilling to follow the State of Ohio laws and has absolutely no problem jeopardizing the lives of every other person on the roadways." It recommended that the sentences imposed on the other pending cases be served concurrently with that ten-year sentence.

{¶ 20} The court decided to impose consecutive sentences on all of the cases, stating as follows:

> This defendant's behavior is indicative of a person that doesn't care about anybody else but himself. He doesn't care about his friend. He doesn't. He just cares about himself. * * * Mr. Clemmons needs to be sentenced for his outrageous behavior in our community and I mean outrageous. Driving through residential neighborhoods * * * in excess of 90 miles an hour.
>
> * * *
>
> So just so everybody knows what this Court is dealing with here, the presentence investigation indicates that this individual has a lengthy, serious criminal record. * * * You know, the comparative analysis has to start with a defendant who has got 19 prior cases. Now, those are misdemeanor and felony cases and a couple of driving under suspensions. What, [defense counsel], you also don't mention is that he has 28 prior traffic convictions, 28 prior traffic convictions. That clearly demonstrates that he is a person that cares only about himself. He's heedlessly indifferent to the rights and safety of everybody else in the community. You will blow through the intersection at 90 miles an hour late in the morning. * * * He's got four cases and he's committing the second case while he's on bond for the first case. He's committing the third case while he's on bond for the first two cases. He's committing the fourth case while he's on bond for the first three cases. We eventually have to incarcerate him to stop what you could arguably say is a one-man walking crime lab. * * * You've now taken a life, along with three other cases where he is drug trafficking in our community to our children, to our friends, to our neighbors, right? Repeatedly, over and over without any remorse whatsoever. * * * I find that your behavior, considering your traffic record, considering your prior record, is the worst possible form of this aggravated vehicular homicide * * *.

* * *

> [T]his individual was on bond committing crimes while on bond for the first case. We have covered that. He continued to act in an unlawful and reckless manner, selling drugs in our community and having possession of drugs in our community.
>
> It is obvious with his driving record and with his criminal record that this sentence is not disproportionate. The harm here is so great and unusual that no single term adequately reflects the seriousness of this individual's conduct and his criminal history shows that consecutive terms are necessary to protect the public. * * * [O]bviously this kind of behavior just simply cannot be tolerated in a civilized society.

{¶ 21} The trial court thereafter announced its sentence. It sentenced Clemmons to eight years in prison on the aggravated-vehicular-homicide offense and to one year in prison on the failure-to-comply offense. The trial court imposed those sentences consecutively to each other, finding that consecutive service was mandatory. The trial court sentenced the defendant to one year in prison on the having-weapons-while-under-disability charge, to be served concurrently with the other sentences in the case. The trial court sentenced Clemmons to one year in prison on the offense of improperly handling a firearm in a motor vehicle, to be served concurrently.[7]

---

[7] The trial court initially announced at the hearing that it was sentencing Clemmons to 18 months in prison on the failure-to-comply charge, to 36 months on the having-weapons-while-under-disability charge and to 18 months on the improper-handling charge. Later in the hearing, it stated that it was sentencing Clemmons to one year in prison on each of those charges. The court did not explain the discrepancy on the record, but its sentencing journal entry states that the sentences on these charges were one year in prison each.

{¶ 22} In the methamphetamine-trafficking case stemming from the August 2020 encounter with police,[8] the trial court sentenced Clemmons to one year in prison, to be served consecutively to the sentences in Clemmons' other cases.

{¶ 23} In the methamphetamine-possession-and-evidence-tampering case stemming from the April 2020 traffic stop,[9] the trial court sentenced Clemmons to one year in prison on each of the two counts, to be served concurrently with each other but consecutively to the sentences imposed in the other two cases.

{¶ 24} In the methamphetamine-possession case stemming from the University Circle traffic stop, the trial court sentenced Clemmons to one year in prison, to be served consecutively to the sentenced imposed in the other cases.

{¶ 25} Clemmons objected to the consecutive sentences at the sentencing hearing.

{¶ 26} In total, then, the trial court sentenced Clemmons to a minimum of 12 years in prison and a maximum of 16 years. The trial court suspended Clemmons' driver's license for life.

{¶ 27} The trial court published sentencing journal entries in each of the cases, stating as follows with regard to consecutive sentences:

> The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish Defendant; that the consecutive sentences are not disproportionate to the seriousness of Defendant's conduct and to the danger Defendant poses to the public; and that, Defendant's history of

---

[8] Cuyahoga C.P. No. CR-21-660510-A.

[9] Cuyahoga C.P. No. CR-21-660490-A.

criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by Defendant.

{¶ 28} Clemmons appealed the sentencing judgment entry in the vehicular-homicide case only, raising the following assignment of error for review:

> The record does not support the trial court's imposition of consecutive sentences.

## II. Law and Analysis

### A. Standard of Review Under R.C. 2953.08(G)(2)

{¶ 29} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4) or 2929.20(I) or (2) the sentence is "otherwise contrary to law." "'Clear and convincing evidence is that measure or degree of proof * * * which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 29, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 30} Clemmons asks us to vacate the consecutive sentences and remand the matter to the trial court for resentencing because the trial court's findings are

not supported by the record; he does not argue that his sentence is "otherwise contrary to law."

## B. Standard of Review for These Consecutive Sentences

{¶ 31} Under Ohio law, sentences are presumed to run concurrently unless the trial court makes the required findings set forth in R.C. 2929.14(C)(4). *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807 and 109808, 2021-Ohio-2586, ¶ 14; *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28. To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

    (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

    (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

    (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 32} Thus, a defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *Reindl* at ¶ 13; *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record "clearly and convincingly" does not support the court's findings made pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Reindl* at ¶ 13.

{¶ 33} Here, Clemmons makes the latter argument. He concedes that the trial court made the required findings under R.C. 2929.14(C)(4) but argues that the record clearly and convincingly does not support the trial court's finding that "consecutive sentences are not disproportionate to the seriousness of [Clemmons'] conduct." R.C. 2929.14(C)(4).

{¶ 34} In addressing this assignment of error, we review the record and consider whether we "clearly and convincingly" find that it does not support that finding. R.C. 2953.08(G)(2).[10]

---

[10] *See also State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5 (lead opinion) ("[T]he trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."), ¶ 27 (Fischer, J., concurring in judgment only) ("[T]he appellate court could not find that the record does not support the trial court's consecutive-sentence findings * * *.") and ¶ 73 (Stewart, J., dissenting) ("De novo review of the record * * * is in fact what the statute requires."). We note that the Ohio Supreme Court has accepted the following proposition of law for review in *State v. Jones*, Ohio Supreme Court Case No. 2022-1049: "A court of appeals violates an appellant's right to meaningful appellate review and its obligations pursuant to R.C. 2953.08(G)(2) when it fails to conduct the proper de novo review in determining whether the trial court made all required findings under R.C. 2929.14(C)(4) and whether the record contains an evidentiary basis sufficient to support each required finding." We also note that the Supreme Court accepted an appeal in *State v. Glover*, Ohio Supreme Court Case No.

## C. Analysis

**{¶ 35}** Clemmons argues that the trial court "did not find that [Clemmons'] conduct in this particular case was more or less serious than that of other cases" and says that the trial court relied too heavily on the fact that Clemmons caused someone else's death in the crash, when "death is inherent with any fact pattern relative to" the aggravated-vehicular-homicide charge. He also says that the trial court relied too heavily on Clemmons' criminal history, as opposed to focusing on the specific factual circumstances of his present offenses.

**{¶ 36}** The state responds that the record supports consecutive sentences.

**{¶ 37}** After a thorough review of the record, we are not left with the "firm belief or conviction" that the consecutive sentences the trial court imposed are disproportionate to the seriousness of Clemmons' conduct.

**{¶ 38}** As an initial matter, the trial court did analyze the specific circumstances of Clemmons' present conduct. The court found it "outrageous" that Clemmons was "driving through residential neighborhoods * * * in excess of 90 miles an hour" with no valid license, "blow[ing] through the intersection at 90 miles an hour late in the morning," and ultimately killing someone. The trial court found that the specific reckless behavior demonstrated in this case, "considering your

---

2023-0654, that raises two assignments of error related to the standard of review in consecutive-sentence cases: (1) "Neither the trial nor the appellate courts are required by R.C. 2929.14(C)(4) to focus on a defendant's aggregate prison term when imposing or reviewing consecutive sentences" and (2) "The clear and convincing standard of review set forth in R.C. 2953.08(G)(2) does not allow the court of appeals to substitute its judgment for that of the trial court."

traffic record, considering your prior record, is the worst possible form of this aggravated vehicular homicide * * *." The trial court then considered the factual circumstances of Clemmons' conduct in the other pending cases, focusing on the fact that Clemmons continued driving without a valid license while possessing illegal drugs. It found an aggravating circumstance in the fact that Clemmons continued engaging in criminal and dangerous conduct "[r]epeatedly, over and over without any remorse whatsoever" even after his prior reckless behavior killed Clemmons' friend.

{¶ 39} The trial court, after appropriately reviewing Clemmons' present criminal conduct in the context of his criminal history, determined that "[t]he harm here is so great and unusual that no single term adequately reflects the seriousness of this individual's conduct * * *. [O]bviously this kind of behavior just simply cannot be tolerated in a civilized society."

{¶ 40} The record supports these findings.

{¶ 41} Clemmons' criminal record stretches back to 2007, at least, and reflects a heedless indifference to traffic laws and a history of drug problems. He incurred drug-related convictions, including for trafficking, in 2007, 2008, 2009, 2013, 2014, 2016 and 2017. In 2009, he was convicted for resisting arrest. He has a conviction for burglary and two OVI convictions.

{¶ 42} The record further reflects that, despite a history of drug abuse and dangerous driving and despite a license suspension, Clemmons simply could not or would not stop getting behind the wheel of a car. In addition to his numerous traffic

citations, his sister wrote that Clemmons routinely drove his great-grandmother to run errands and take her to appointments and routinely drove Crenshaw, too. Clemmons reported in the presentence-investigation report that he "loves cars" and wants to learn to paint and wrap cars.

{¶ 43} Not only did Clemmons continue driving when he had no valid license, but he continued driving recklessly. He continued speeding and driving with drugs, even when he was on bond and even after his reckless driving — in the course of attempting to flee the police — killed his friend. He was cited for driving 88 m.p.h. the month after he was released on bond and then he was caught driving twice the following month, including once with methamphetamine on his person.

{¶ 44} It was reasonable for the trial court to find that Clemmons' conduct in these four cases was more serious in light of Clemmons' record and history of driving recklessly and driving while in the possession of illegal drugs (including for purposes of trafficking). It was further reasonable to find that Clemmons' conduct was more serious in the 2021 methamphetamine-possession case because he committed that offense while on bond.

{¶ 45} In reviewing the record, we did note several positive facts. Clemmons seemed genuinely remorseful at sentencing that his conduct resulted in Crenshaw's death, and the letters from his relatives confirmed that he was very affected by the tragic consequence of his actions. Clemmons previously secured his GED in prison and also took college courses while incarcerated. He reported that he is willing to attend substance-abuse treatment and receive related services. He said he is

interested in attending self-help, employment and educational programs. Time will tell if Clemmons follows through on securing that help. But these positive facts do not diminish the seriousness of Clemmons' conduct.

{¶ 46} We have thoroughly reviewed the record and considered whether it clearly and convincingly does not support the trial court's finding that these consecutive sentences and an aggregate 12- to 16-year sentence are not disproportionate to the seriousness of Clemmons' conduct. Clemmons does not challenge any of the other necessity or proportionality findings. After our review, and even noting that the sentence exceeded the state's recommended sentence of ten years, we do not have the firm conviction or belief that the record does not support the trial court's finding in light of the consecutive terms imposed and the aggregate sentence. We find no error in the sentences.

{¶ 47} We, therefore, overrule Clemmons' assignment of error.

III. Conclusion

{¶ 48} Having overruled Clemmons' sole assignment of error for the reasons stated above, we affirm.

It is ordered that the appellee recover from the appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MICHAEL JOHN RYAN, J., CONCUR