[Cite as *State v. Riley*, 2025-Ohio-3276.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                         No. 114449

    v.                                    :

TYJEIR RILEY,                     :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 11, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-684821-D

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brad S. Meyer, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Noelle A. Powell-Sacks, Assistant Public Defender, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} In this reinstated appeal, defendant-appellant Tyjeir Riley ("Riley") appeals the trial court's imposition of consecutive sentences following resentencing. Upon review, we affirm.

## I.    Facts and Procedural History

{¶ 2}   In October 2023, Riley and seven codefendants were indicted in a 224-count indictment for conduct that occurred between April 2022 and July 2023. Eighty-four of those counts were brought against Riley, who was charged with the following:

- One count of engaging in a pattern of corrupt activity, a first-degree felony with a furthermore clause that at least one incident was a third-degree felony or higher;

- Thirty-two counts of receiving stolen property, first-degree misdemeanors and fourth- and fifth-degree felonies, some with a one-year firearm specification;

- Ten counts of grand theft, third- and fourth-degree felonies, some with one- and three-year firearm specifications;

- Five counts of breaking and entering, fifth-degree felonies;

- Four counts of failure to comply, third- and fourth-degree felonies with furthermore clauses that Riley's operation of a motor vehicle caused a substantial risk of serious physical harm to persons or property or he fled immediately from the commission of a felony and some with a one- and three-year firearm specifications;

- Three counts of burglary, second-degree felonies;

- Ten counts of theft, fifth-degree felonies;

- Five counts of felonious assault, second-degree felonies with one-, three-, and five-year firearm specifications;

- One count of discharge of a firearm on or near prohibited premises, a third-degree felony with one- and three-year firearm specifications;

- Eight counts of misuse of credit cards, first-degree misdemeanors;

- Two counts of aggravated robbery, first-degree felonies with one- and three-year firearm specifications;

- One count of aggravated burglary, a first-degree felony with one- and three-year firearm specifications;

- One count of having weapons while under disability, a third-degree felony; and;

- One count of possessing criminal tools, a fifth-degree felony with a furthermore clause that the items involved were intended for use in the commission of a felony and a forfeiture-of-property specification.

Riley pled not guilty to the indictment.

{¶ 3} In August 2024, Riley pled guilty to 39 of the 84 counts (some of which were amended):

- One count of engaging in a pattern of corrupt activity, a first-degree felony (amended "Count 1");

- Fifteen counts of receiving stolen property, fourth- and fifth-degree felonies;

- Four counts of grand theft, third- and fourth-degree felonies, one involving a firearm (amended "Count 215");

- Three counts of burglary, second- and third-degree felonies;

- One count of discharge of a firearm on or near prohibited premises, a third-degree felony;

- Four counts of theft, fifth-degree felonies;

- Three counts of attempted failure to comply with an order or signal of a police officer, fourth-degree felonies, some with furthermore clauses and one with a one-year firearm specification;

- One count of robbery, a second-degree felony with a one-year firearm specification;

- Four counts of breaking and entering, fifth-degree felonies;

- One count of having weapons while under disability, a third-degree felony;

- One count of possessing criminal tools, a fifth-degree felony with a forfeiture specification; and

- One count of misuse of a credit card, a first-degree misdemeanor.

The remaining counts were nolled.

{¶ 4} Riley was referred to the probation department for a presentence investigation and report ("PSI report") and the court's psychiatric clinic for examination and dispositional recommendations ("clinic report"). The PSI report provided a detailed summary of Riley's offenses, including information obtained by numerous police departments during their investigations of the crimes. The PSI report revealed that Riley had several juvenile delinquent adjudications with community-control placements and violations, a prior conviction, and numerous active warrants and pending cases. The PSI report revealed that Riley reported that he was previously diagnosed with attention-deficit/ hyperactivity disorder ("ADHD"), amongst other diagnoses he could not recall. Riley also reported a history of drug and alcohol use. The PSI report noted that Riley was placed in the high-risk level for recidivism.

{¶ 5} Prior to the sentencing hearing, the State filed a sentencing memorandum detailing the facts and circumstances surrounding each count and applicable sentencing statutes. The State asserted that Riley and his codefendants "would routinely load up one or more stolen vehicles"; drive to surrounding communities; check each driveway or open garage for unlocked vehicles while victims slept inside their homes; steal any unlocked vehicle with keys inside; take

any credit cards, checks, valuables, and/or firearms located in the vehicle; and purchase gift cards before any victims awoke. The State attached several exhibits to the memorandum to support its theory that Riley was "an active leader and teacher" in this criminal venture. The State argued that a minimum or low-level sentence would demean the seriousness of Riley's offenses given his record; his involvement in high-level, violent offenses, including robbery with a firearm and multiple burglaries; his continued involvement with his codefendants, even after their activities resulted in a homicide; and his commission of numerous felonies involving numerous victims.

{¶ 6} At the sentencing hearing, the State highlighted its belief that Riley was "sort of the head of the snake" and that "this is the type of behavior that he has been undertaking" since he was 18 years old. The State further noted Riley's juvenile criminal history and mentioned that his behavior failed to change. According to the State, Riley's codefendants went to him for advice and he "was the one leading." The State asserted that Riley was well known in the community and "the go-to," so much so that he would receive orders for vehicles. The State alleged that in Riley's jail phone calls, he told others about the questions detectives were asking regarding a related homicide. The State claimed, "He knew about it, got out of town. He wanted to make sure the team kept going, he didn't want them to stop. He wanted them to keep stealing cars so he could get money for lawyers or [legal] expenses." The State believed that a significant sentence in the range of 12 or 13 years was warranted and not unreasonable because Riley "was the captain of this team."

**{¶ 7}** Defense counsel stated that Riley was intelligent, charismatic, pleasant, interested in his own defense, and reasonable; however, "some of his best traits, unfortunately, he put to work in a manner . . . that brought him into a world that started to spin out of control." The defense suggested that Riley's "underlying issues" offered some explanation as to "how we got here." Defense counsel noted that Riley was diagnosed with multiple severe dependency issues and ADHD and that "those put together with his decision making resulted in this unlawful repeated behavior." The defense also offered "a different perception" to the State's characterization of Riley as "the head of the snake":

> [U]nfortunately what he used his skills for, what he became good at, you know, if you're good enough, people will come find you, you're not going to have to find them. And unfortunately, he was smart enough to figure out how to, I guess handle these vehicles in a manner that went on, and yeah, word did get around. Did he ever sit back and say I'm going to be the head of what's been perceived and charged and eventually put through as an organization to go out there as some sort of organized crime king pin, I don't think that was ever his intent, Judge. I think that he got pulled into this world because it was what he was good at. I think that his judgment was marred by his two to $300 a day drug addiction habit. I think it compounded, as decisions do, one bad one after the next that led us here, Judge, with an extensive indictment, an extensive plea and an extensive amount of, you know, prison time he could serve.

Defense counsel believed that Riley showed remorse and did not think about the repercussions of his actions, stating, "I don't think until he got stopped and sat and sobered up he had any idea the chaos that had followed these decisions." According to defense counsel, Riley "t[ook] responsibility by way of a plea," stated "that he wishes to do better in the future," and participated in programming while

incarcerated. Riley subsequently apologized for the harm he caused to the victims and the community, stating that he was working on himself, realized his actions and decisions "were not the best," and took "full accountability" for them.

{¶ 8} The trial court advised Riley that it took "everything I know about you and about your case" into account in determining the sentence to impose, including the presentations by counsel and Riley, the PSI report, and the clinic report.[1] The trial court noted that certain sentences had to be served consecutively, specifically the sentences for the two one-year firearm specifications and Count 215, grand theft of a firearm. The trial court also imposed a consecutive prison sentence on Count 1, engaging in a pattern of corrupt activity, explaining:

> [A]s part of the presentence investigation report, I learned that you were on so-called juvenile probation for some fair number, if not every one of these charges. So, in this case I am going to impose a consecutive prison term. I do find that consecutive service is necessary not only but partly certainly to protect the public from future crime as well as to adequately punish you for your conduct. But I also find that consecutive service of some of these sentences is not disproportionate to the seriousness of your conduct and to the danger and threat that you pose to the public.
>
> Additionally, I do find, as I already mentioned, that you committed one or more of these offenses while on what I'm colloquially referring to as juvenile probation.
>
> But also, I do find that your history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime.

---

[1] We note that Riley filed a motion to supplement the appellate record with his PSI report, the motion was granted, and the record was supplemented accordingly. However, the clinic report was not included in this court's record.

The trial court stated that "everything else is going to be concurrent."  In its nunc pro tunc sentencing entry, the trial court further stated:

> On [Count 1], the court finds, pursuant to R.C. 2929.14(C)(4), that: Riley committed one or more of the multiple offenses while he was awaiting trial in Portage C.P. Case No. 2021 CR 01212; at least two of the multiple offenses in this case were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Riley's conduct; and Riley's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by him.

(Cleaned up.) [2]   The trial court concluded, "Riley's net felony prison sentence includes: 2 years on the firearm specifications; plus 7 years on Count 1; plus 12 months on Count 215; plus 3 concurrent years on every other count, for a total of 13 years in prison." [3]  (Cleaned up.)

{¶ 9}   Riley appealed, raising a single assignment of error for review.

**Assignment of Error**

> There is clear and convincing evidence that the record does not support the consecutive sentence which the trial court imposed.

---

[2] Riley filed an appeal from the trial court's initial September 2024 sentencing entry.  This court noted two anomalies in the initial sentencing entry and requested the parties brief the issues.  In April 2025, we dismissed the appeal for lack of a final, appealable order and restored the case to the sentencing phase at the trial-court level so that a new and correct sentencing entry could be issued.  The trial court issued a nunc pro tunc entry within 30 days, and Riley filed a motion to reinstate the appeal.  This court granted Riley's motion and determined that the May 2025 nunc pro tunc entry presented a final, appealable order.

[3] The trial court also noted that the Reagan Tokes Law provisions in R.C. 2929.144 applied to Count 1, a qualifying first-degree felony.  Therefore, Riley was sentenced to a minimum 7-year prison term and a maximum 10.5-year prison term on that count.

## II.     Law and Analysis

{¶ 10} In his sole assignment of error, Riley argues that the record does not support the trial court's imposition of consecutive sentences.  Riley acknowledges that the trial court was required to run the sentences for two one-year firearm specifications and the theft-of-a-firearm charge consecutively to the base sentence, arriving at a "substantial 10-year sentence for a young man who had never before served a prison sentence."  However, Riley challenges the trial court's imposition of a discretionary three-year consecutive sentence, making his total sentence 13 years plus the possible imposition of a Reagan Tokes Law tail.

{¶ 11} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public; and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Moreover, R.C. 2929.14(C)(4) and Crim.R. 32(A)(4) require the trial court to make statutory findings at the sentencing hearing prior to imposing consecutive sentences: "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999). The trial court must also "incorporate its findings into its sentencing entry." *Id.* at ¶ 37.

{¶ 12} On appeal, a reviewing court must be able to ascertain evidence supporting the trial court's findings from the record before it. *State v. Wells*, 2021-Ohio-2585, ¶ 71, citing *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.), quoting *Bonnell* at ¶ 37. When evaluating a trial court's imposition of consecutive sentences, an appellate court must "review the record, including findings underlying the sentence" and may modify or vacate the sentence only "if it clearly and convincingly finds . . . that the record does not support the sentencing court's findings under . . . [R.C. 2929.14(C)(4)]" or "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2).

{¶ 13} After Riley entered a guilty plea to 39 of 84 counts, some of which were amended, the trial court was statutorily required to impose consecutive

sentences on two one-year firearm specifications and Count 215. To determine whether consecutive sentences were appropriate for each of the other 38 counts, the trial court considered everything it knew about Riley and this case, including statements made by counsel and Riley as well as the PSI and clinic reports. The trial court then made each of the three required R.C. 2929.14(C)(4) findings at the sentencing hearing and in its sentencing entry. First, the trial court found that consecutive sentences were necessary to protect the public from future crime and to punish Riley. Second, the trial court found that consecutive sentences were not disproportionate to the seriousness of Riley's conduct and to the danger he posed to the public. Finally, the trial court made findings under R.C. 2929.14(C)(4)(a) and (c) to satisfy the third prong of the analysis: Riley's history of criminal conduct demonstrated that consecutive sentences were necessary to protect the public from future crime and Riley was "on so-called juvenile probation for some fair number, if not every one of these charges."[4] As a result of these findings, the trial court imposed an additional consecutive sentence on Count 1 only, running all other non-mandatory consecutive sentences concurrently.

{¶ 14} On appeal, Riley challenges only one of the trial court's findings — its finding under R.C. 2929.14(C)(4)(c) — claiming that his criminal history "does *not* provide support for a discretionary consecutive term because his youth and his

---

[4] We note that the trial court included additional findings under R.C. 2929.14(C)(4)(a) and (b) in its sentencing entry. Because Riley did not challenge these findings and we can dispose of his appeal without considering them, we decline to do so.

severe chemical dependency were factors in the creation of that involvement." (Emphasis in original.) We note that a single R.C. 2929.14(C)(4)(a)-(c) finding is sufficient to satisfy the third statutory requirement for imposing a consecutive sentence and Riley does not challenge the trial court's other R.C. 2929.14(C)(4) findings. Nonetheless, we find that the record clearly and convincingly supports the trial court's findings under R.C. 2929.14(C)(4)(c) and that consecutive sentences were appropriate in Riley's case.

{¶ 15} Ohio case law has clearly established that a defendant's juvenile record may be considered as part of an offender's criminal conduct under R.C. 2929.14(C)(4) for the purposes of determining whether to impose consecutive sentences. *State v. Viers*, 2022-Ohio-4083, ¶ 18 (8th Dist.), citing *State v. Grant*, 2018-Ohio-1759, ¶ 42 (8th Dist.) (citing additional case law). Valid sentencing considerations may also include uncharged conduct, prior arrests, facts supporting a charge that resulted in acquittal, and facts related to a charge that was dismissed under a plea agreement. *Id.* at ¶ 16, citing *State v. Steele*, 2017-Ohio-7605, ¶ 10-11 (8th Dist.).

{¶ 16} Our review of the record reveals that Riley had a lengthy juvenile criminal history, including several juvenile delinquent adjudications with community-control placements and violations. The record further reveals that after Riley "had reached the maximum benefits through the juvenile court system," he continued to commit new offenses and demonstrated a complete disregard for the law. Indeed, Riley had a prior conviction in the adult court system, numerous active

warrants and pending cases; and pled guilty to 39 counts in this case for conduct that spanned from April 2022 to July 2023. Accordingly, we cannot clearly and convincingly conclude that the record does not support the trial court's R.C. 2929.14(C)(4)(c) finding. Consequently, Riley's single assignment of error is overruled.

{¶ 17} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)