[Cite as *State v. Akins*, 2025-Ohio-5632.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff- Appellee,           :
                                        No. 114971

v.                                      :

DEVIN AKINS,                            :

     Defendant-Appellant.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:**  December 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679838-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carley Berman, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} After a bench trial, defendant-appellant Devin Akins ("Akins") was convicted of three counts of failure to comply with an order or signal of a police

officer pursuant to R.C. 2921.331(B), two counts of aggravated vehicular assault under R.C. 2903.08(A)(2), one count of failure to stop after an accident under R.C. 4549.02(A)(1), and two counts of vandalism pursuant to R.C. 2909.05(B)(1)(b) and 2909.025(B)(2). He was sentenced to five and a half years in prison. Akins appeals the trial court's decision asserting the following five assignments of error:

(1) The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish the elements necessary to support the convictions beyond a reasonable doubt.

(2) Appellant's convictions are against the manifest weight of the evidence.

(3) The court erred by failing to merge allied offenses of similar import over defense objection.

(4) The court erred by denying appellant's motion for mistrial because the potentially exculpatory evidence was not produced in violation of Appellant's Sixth and Fourteenth Amendment Rights to due process, and a fair trial.

(5) Appellant's sentence is contrary to law because the record does not support the imposition of consecutives sentences on counts 3 and 9.

{¶ 2} Based on our review of the record, we overrule Akins's assignments of error and affirm his convictions and the sentences below. Specifically, we find that the State of Ohio ("State") presented sufficient evidence to prove beyond a reasonable doubt the essential elements of Akins's three failure-to-comply convictions and two aggravated-vehicular-assault-convictions and that these convictions were not against the manifest weight of the evidence. The trial court did not commit error in failing to merge the sentences for his three failure-to-comply

convictions because they are of dissimilar import and significance involving separate victims and separate identifiable harm and constitute multiple separate offenses. The trial court did not err in denying Akins's motion for a mistrial on the grounds that his right to due process was violated because the evidence at issue was too speculative to constitute material evidence within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), and because Akins failed to demonstrate that the State acted in bad faith in failing to preserve potentially useful evidence. And lastly, we find that the trial court's imposition of consecutive sentences for Akins's two aggravated-vehicular-assault convictions is clearly and convincingly supported by the record in this case.

{¶ 3} The judgment below is affirmed.

## I.    Statement of Facts

### A.    Indictment and Pretrial

{¶ 4} In April 2023, the State filed a 14-count indictment against Akins. The indictment included three counts of failure to comply with an order or signal of a police officer pursuant to R.C. 2921.331(B) ("failure to comply"), two counts of aggravated vehicular assault under R.C. 2903.08(A)(2)(b), one count of failure to stop after an accident under R.C. 4549.02(A)(1), and two counts of vandalism pursuant to R.C. 2909.05(B)(1)(b) and 2909.025(B)(2). Counts 6, 7, and 10 were subsequently dismissed prior to trial. In January 2025, a bench trial was held on the remaining counts of the indictment.

## B. Trial Testimony

{¶ 5} In February 2023, Akins was 20 years old and working at a roofing company. On the day in question, Akins borrowed his aunt's 2019 black Hyundai Elantra ("vehicle") to drive to work. In turn, she asked him to drive his uncle ("Uncle") to culinary school at Edwins located in the Shaker Square area of Cleveland, Ohio. Thus, on that day, Akins picked up Uncle and they proceeded to travel toward school and work, respectively.

{¶ 6} Cleveland Heights Patrol Officer Joshua Payne ("Officer Payne") was on duty that day. He was parked and monitoring traffic on Mayfield Road in Cleveland Heights. He observed Akins's vehicle traveling approximately 46 m.p.h. in a 25-m.p.h. zone. He pulled out and began to follow Akins's vehicle as he turned southbound onto Coventry Road. Akins stopped at a red traffic light, and Officer Payne pulled up behind him.

{¶ 7} When the traffic light turned green, Akins proceeded through the intersection. Officer Payne then attempted to initiate a traffic stop. He turned on his lights and sirens and radioed dispatch that he was initiating a traffic stop. Officer Payne testified that he then observed Akins "increase speed and driving left of center around another vehicle." He radioed dispatch that Akins was "failing to yield." At that time, Payne terminated the pursuit per police department policy only permitting police pursuits involving violent offenders. However, Officer Payne continued to observe Akins as he continued southbound traveling at "a high rate of speed."

{¶ 8} As Akins continued along Coventry Road, he collided with a vehicle driven by C.T. At the time, C.T. was traveling west on Cedar Road and proceeding through the intersection of Cedar Road and Coventry Road. She stated that "it was a green light and everything was clear." C.T. testified that Akins "just came out right in front of me," ran his red traffic light, and caused her to crash into him. C.T. also observed that Akins's vehicle did not stop and continued to drive away after the accident. As a result of this accident, C.T. suffered a fractured spine and a sprained knee requiring months of physical therapy. Her car was destroyed.

{¶ 9} Officer Payne testified that he heard a loud crash and saw a large plume of smoke in the air indicating that there may have been an accident. Officer Payne made his way toward the smoke and observed that an accident had occurred at Cedar Road and Coventry Road. He observed Akins's vehicle at the scene of the accident. At this time, Officer Payne also witnessed Akins continue to drive his vehicle away from the accident, off the road, and over the tree lawn, and then he lost sight of the vehicle. Officer Payne then went to assist C.T. and call for assistance.

{¶ 10} At the time of the accident, Cleveland Heights Patrol Officer Kyle O'Donnell ("Officer O'Donnell") was on duty conducting traffic control in the area of Cedar Road and Coventry Road. He witnessed the accident between Akins and C.T. He observed that Akins failed to stop for the accident, continuing to drive southbound on Coventry Road. In response, Officer O'Donnell turned on his lights, activated his sirens, and attempted to initiate a traffic stop. He then observed

Akins's "vehicle continue southbound on Coventry at a rate of speed from 45 to 60," driving "erratically," and "crossing left of center several times."

{¶ 11} Specifically, regarding speed, Officer O'Donnell testified, "[A]nd due to the accident, it was going maybe five miles per hour. Once I initiated my lights, that's when the car made evasive maneuver and started picking up speed." When further prompted, Officer O'Donnell stated, "[I]t went from five to approximately 45 miles per hour in this short time." Officer O'Donnell also saw Akins drive the vehicle off the road onto the sidewalk. Shortly thereafter, Officer O'Donnell found Akins's vehicle overturned at the intersection of Coventry Road and Scarborough Road after colliding with and knocking down a streetlight and traffic pole.

{¶ 12} As a result of this second collision, Uncle suffered serious injuries including a traumatic head injury, a broken sternum, and a broken spine. As of the date of trial, Uncle remained paralyzed from the waist down and had been living at a nursing home since the accident.

{¶ 13} Uncle testified that he has had minimal communication with Akins since the accident. Uncle stated that he did not hear from Akins until well after this criminal case was initiated. Uncle further testified that he recorded a telephone call from Akins during which Akins asked him if he (Uncle) really wanted to see him (Akins) go to jail.[1] They also discussed the accident, and Akins indicated that he agreed that he fled from the police and that he was responsible for what had

---

[1] The recording of this conversation was introduced and authenticated at trial.

happened to Uncle. Further, while Akins did apologize to Uncle, the State argued it appeared that he did so as part of an attempt to prevent Uncle from testifying at the trial.

## B. Post-Trial

{¶ 14} At the conclusion of trial, Akins moved for a mistrial based on the State's alleged failure to produce the event data recorder ("EDR") or "black box" from Akins's vehicle. Akins alleged that the data from the EDR could possibly demonstrate that he was not speeding at the time of the accidents. The State stated that it was not in possession of the EDR and did not know if any data was ever retrieved from the EDR. Neither party had ever seen the data from the EDR. Thus, the data could be exculpatory — show that he was not speeding — or inculpatory — show that he was speeding. The State also argued that any data from the EDR would not negate the evidence produced at trial demonstrating that Akins was responsible for the accidents and resulting injuries — even if he had not been speeding. The trial court denied Akins's motion.

{¶ 15} Akins also moved to dismiss the indictment under Crim.R. 29. The trial court granted, in part, his motion and dismissed Counts 5, 11, and 12 of the indictment. Additionally, the trial court dismissed all firearm and forfeiture specifications.[2] The trial court then found Akins guilty on the remaining three

---

[2] Several firearms were found in Akins's vehicle after the accident, but the evidence at trial failed to demonstrate that any of these firearms belonged to him or that he was aware of their existence in the vehicle.

counts for failure to comply, two counts of aggravated vehicular assault, one count of failure to stop, and two counts of vandalism.

{¶ 16} In February 2025, he was sentenced to five and a half years in prison. The trial court merged counts one and two for failure to comply but denied Akins's request to merge the third failure-to-comply conviction under Count 8 of the indictment. The trial court also imposed consecutive sentences for the two counts of aggravated vehicular assault finding that the requirements of R.C. 2929.14(C)(4) were satisfied. This appeal follows.

## II. Law and Analysis

### A. Assignment of Error No. 1 — Sufficiency of the Evidence

{¶ 17} In his first assignment of error, Akins argues that his motion for acquittal under Crim.R. 29 should have been granted by the trial court because his three convictions for failure to comply and two convictions for aggravated vehicular assault were not supported by sufficient evidence. Akins's convictions under Counts 1 and 2 of the indictment for failure to comply relate to Officer Payne's initial attempt to initiate a traffic stop. Additionally, under Count 1, Akins was convicted of the felony enhancement provision that his operation of the vehicle caused a substantial risk of serious physical harm to persons or property pursuant to R.C. 2921.331(C)(5)(a)(ii). Under Count 2, Akins was also convicted with the felony enhancement provision that his operation of his vehicle was a proximate cause of serious physical harm to persons or property under R.C. 2921.331(C)(5)(a)(i).

{¶ 18} Akins's conviction under Count 8 of the indictment for failure to comply relates to Officer O'Donnell's attempt to initiate a traffic stop immediately following Akins's accident with C.T. Under Count 8, Akins was also convicted of a failure to comply with the felony enhancement provision that he was fleeing immediately after the commission of a felony — the accident with C.T. — pursuant to R.C. 2921.331(C)(4). Under Counts 3 and 9 of the indictment, Akins was convicted of aggravated vehicular assault arising from the two accidents each causing serious injuries to C.T. and Uncle, respectively. We find that both of these convictions were supported by sufficient evidence, and assignment of error No. 1 is overruled.

### 1. Standard of Review

{¶ 19} "'A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Harris*, 2024-Ohio-1579, ¶ 84 (8th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. "The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *Id.*, citing *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). "An appellate court's function when reviewing sufficiency is to determine '"whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Id.*, quoting *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Lastly, with a sufficiency inquiry,

"an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction." *Harris* at ¶ 84, citing *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

### 2.  Failure-to-Comply Convictions

{¶ 20} R.C. 2921.331(B) provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Hence, pursuant to this statute, the State must establish that (1) Akins operated a vehicle; (2) to willfully elude or flee a police officer; (3) after receiving a visible or audible signal from that officer to stop his vehicle.  "'Willfully' is synonymous with 'purposely' or 'intentionally.'" *State v. Scott*, 2013-Ohio-4599, ¶ 16 (8th Dist.).  As explained by this court in *State v. Roberts*, 2008-Ohio-5750 (8th Dist.):

> The term "willfully" is not defined in R.C. 2901.22, which is the statute that covers culpable mental states for criminal liability.  However, the 1974 committee comments to R.C. 2901.22 state as follows: "Purpose is defined in terms of a specific intention either to cause a certain result, or to engage in conduct of a certain nature regardless of what the offender intends to accomplish through that conduct.  'Purposely' in the new code equates with 'purposely,' 'intentionally,' 'willfully," or 'deliberately' in the former law."

*Roberts* at ¶ 8; *accord Scott* at ¶ 16.  Whether a defendant acted willfully may be inferred by their conduct. *Id.* at ¶ 9.  More specifically, a court "may infer appellant willfully eluded the police from such conduct given that 'it is a fundamental principle that a person is presumed to intend the natural, reasonable and probable

consequences of his voluntary acts.'" *Id.*, quoting *State v. Gerrard*, 2007-Ohio-1244, ¶ 32 (10th Dist.). "Generally, the intent of a person cannot be proven by direct evidence; therefore, proof of intent may be demonstrated through circumstantial evidence." *Scott* at ¶ 16, citing *State v. Cole*, 2011-Ohio-409, ¶ 23 (3d Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990); *accord Gerrard* at ¶ 31.

{¶ 21} Akins does not dispute that both police officers activated their lights and sirens and attempted to initiate a traffic stop. Instead, Akins argues that there is insufficient evidence demonstrating that he "willfully" eluded or fled from the police. In short, Akins argues that there is no evidence that he knew that either officer attempted to stop him because the lights and sirens were only activated for a short time and, after the accident with C.T., he did not have control of his vehicle.

{¶ 22} Nevertheless, we find that there is sufficient evidence in the record from which the trial court could infer and find that Akins operated his vehicle willfully to elude and flee the police officers. Officer Payne testified that after he activated his lights and sirens, Akins increased his speed, traveled left of center to pass another vehicle, and did not stop his vehicle. Viewing this evidence in a light most favorable to the State, we find that there is sufficient evidence to establish the essential elements of the offense beyond a reasonable doubt and to conclude that Akins acted willfully under Count 1 of the indictment for failure to comply.

{¶ 23} We also find that there was sufficient evidence to establish the essential elements to convict Akins of the felony enhancement provisions pursuant to R.C. 2921.331(C)(5)(a)(i) and 2921.331(C)(5)(a)(ii). First, regarding the felony

enhancement provision that his operation of the vehicle caused a substantial risk of serious physical harm to persons or property, Officer Payne's testimony demonstrated that Akins was traveling at a high rate of speed, maneuvering around cars, and driving his vehicle left of center to pass a vehicle. We find that this evidence sufficiently established the necessary elements for this enhancement and a rational trier of fact could conclude that driving in this manner poses a substantial risk of physical harm to persons or property. Thus, the evidence was sufficient for the trial court to convict Akins of failure to comply under Count 1 of the indictment as a felony of the third degree.

{¶ 24} Second, regarding the felony enhancement provision that his operation was a proximate cause of serious physical harm to persons or property, we also find that Officer Payne's testimony regarding Akins's operation of his vehicle together with the testimony of C.T. regarding her injuries provide sufficient evidence establishing the essential elements of this provision and for a rational trier of fact to conclude that Akins's operation of his vehicle proximately caused serious physical harm to a person. Thus, the evidence was sufficient for the trial court to also convict Akins of a failure-to-comply conviction under Count 2 of the indictment as a felony of the third degree.

{¶ 25} With respect to Akins's conviction for failure to comply as charged in Count 8, Officer O'Donnell witnessed the accident between Akins and C.T. Notably, he testified that he observed Akins continue to drive away from the accident. Officer O'Donnell then testified that after he activated his lights and sirens to initiate a

traffic stop, Akins continued to drive away, increased his speed from approximately 5 m.p.h. to 45 m.p.h., and began to drive erratically crossing left of center several times. Akins did not stop his vehicle in response to Officer O'Donnell's signal to stop. Viewing this evidence in a light most favorable to the State, we find that there was sufficient evidence to establish the essential elements beyond a reasonable doubt for the offense of failure to comply and for a rational trier of fact to conclude that Akins acted willfully. Consequently, the evidence was sufficient for the trial court to convict him of failure to comply under Count 8 of the indictment. Additionally, there was sufficient evidence above supporting Akins's conviction of the felony enhancement provision under R.C. 2921.331(C)(4) that he was fleeing immediately after the commission of a felony — the accident between Akins and C.T. Specifically, Officer Payne, Officer O'Donnell, and C.T. each stated that they observed Akins drive away from the accident.

### 3. Aggravated-Vehicular-Assault Convictions

{¶ 26} R.C. 2903.08(A)(2)(b) generally provides that "no person while operating or participating in the operation of a motor vehicle . . . shall cause serious physical harm to another person . . . in any of the following ways . . . recklessly." Thus, the State must establish that Akins (1) was driving the motor vehicle in question; (2) operated the vehicle in a reckless manner; and (3) caused serious physical harm to another person. R.C. 2903.08(A)(2)(b). Akins does not dispute (and the record below confirms) that Akins was driving the vehicle at the time of each accident and Uncle and C.T. suffered serious physical harm because of their

respective accidents. Rather, Akins contends that both of his aggravated-vehicular-assault convictions lack sufficient evidence demonstrating that he operated the vehicle recklessly.

{¶ 27} R.C. 2901.22(C) defines "reckless" as follows:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 28} We conclude that the record contains sufficient evidence demonstrating that Akins acted recklessly. Specifically, the record provides the testimony of two police officers as well as C.T. who each testified that they observed Akins traveling at a high rate of speed during the period surrounding these two accidents. The police officers also testified that Akins was driving erratically, evasively, crossing left of center, and maneuvering around other cars during this time as well as driving in a manner to evade police. C.T. further testified that Akins ran the red light causing the collision between their two vehicles. Viewing this evidence in the light most favorable to the State, we find that the State met its burden of production and established the necessary elements beyond a reasonable doubt for both of Akins's convictions for aggravated vehicular assault.

**B.    Assignment of Error No. 2 – Manifest Weight of the Evidence**

{¶ 29} In his second assignment of error, Akins contends that his convictions for failure to comply, failure to stop, and aggravated vehicular assault are against the

manifest weight of the evidence.  Under this assignment of error, Akins essentially raises the same arguments as he did under assignment of error No. 1.  Namely that there is no evidence that he willfully evaded the police or acted recklessly.  He also asserts that his convictions are against the manifest weight of the evidence because there is no evidence to corroborate the testimony provided by Officer Payne, Officer O'Donnell, or C.T.  Based on our thorough review of the record before us, we find that the evidence does not weigh heavily against Akins's convictions and, further, that Ohio law does not require corroborating testimony in order to support a conviction.  Assignment of error No. 2 is overruled.

### 1.    Standard of Review

{¶ 30} "A manifest weight challenge questions whether the State has met its burden of persuasion."  *State v. Harris*, 2020-Ohio-1497, ¶ 28 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d at 390. "[W]eight of the evidence addresses the evidence's effect of inducing belief.  In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386-387.  A manifest weight challenge raises factual issues and our review is as follows:

> "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'"

*Harris* at ¶ 28, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "The use of the word 'manifest' in the standard of review 'means that we can only reverse the trier of fact if its decision is very plainly or obviously contrary to the evidence.'" *Id.*, quoting *State v. Hernandez*, 2018-Ohio-5031, ¶ 20 (8th Dist.).

### 2. Analysis

{¶ 31} Based on our review of the record before us, we cannot conclude that this case presents us with the exceptional case demanding reversal in order to prevent a manifest miscarriage of justice. As discussed in detail above, the record contains ample evidence from Officers Payne and O'Donnell as well as from C.T. and Uncle supporting Akins's convictions for failure to comply and aggravated vehicular assault. After weighing this evidence and considering the credibility of the witnesses, we cannot conclude that this evidence weighs heavily against conviction, i.e., Akins's convictions here are not against the manifest weight of the evidence.

{¶ 32} We also find that the record demonstrates that Akins failed to stop after his accident with C.T. violating R.C. 4549.02. Officer O'Donnell, Officer Payne, and C.T. each testified that Akins did not stop after the accident but continued traveling away from the accident. Moreover, when he activated his lights and sirens in order to initiate a traffic stop, Officer O'Donnell observed Akins increase his speed and continue to travel away from the scene of the accident. This evidence demonstrates that Akins not only failed to stop after the accident but that he also did not intend to stop after the accident.

{¶ 33} After a thorough review of the record, we also reject Akins's assertion that his convictions are against the manifest weight of the evidence because of the lack of corroborating physical evidence or eyewitness testimony. It is well-settled that a "conviction may rest solely on the testimony of a single witness, if believed, and there is no requirement that a witness' testimony be corroborated to be believed." *State v. Lucas*, 2024-Ohio-842, ¶ 72 (8th Dist.); *see, e.g., State v. Flores-Santiago*, 2020-Ohio-1274, ¶ 38 (8th Dist.); *State v. Black*, 2019-Ohio-4977, ¶ 43 (8th Dist.). Accordingly, we are unpersuaded by Akins's arguments that the testimony of Officer Payne, Officer O'Donnell, and C.T. alone cannot support his convictions.

{¶ 34} Akins's second assignment of error is overruled.

## C.  Assignment of Error No. 3 – Merger of Offenses

{¶ 35} In his third assignment of error, Akins argues that the trial court erred in refusing to merge his failure-to-comply conviction under Count 8 of the indictment with his failure-to-comply convictions under Counts 1 and 2 of the indictment that had been correctly merged by the trial court. Akins contends that his three failure-to-comply convictions arose from a single course of conduct, were not dissimilar in import or significance, and were committed with no separate animus. Thus, he asserts the requirements for the merger of offenses under R.C. 2941.25 were satisfied. Based on our review of the record, we find that Akins's failure-to-comply convictions are both of dissimilar import and significance involving separate victims with separate identifiable harm and were committed

separately. Therefore, the trial court did not err in refusing to merge these offenses and Akins's third assignment of error is not well taken.

### 1. Standard of Review

{¶ 36} Appellate courts review whether offenses are allied offenses of similar import under a de novo standard. *State v. Sims*, 2024-Ohio-5699, ¶ 28 (8th Dist.), citing *State v. Williams*, 2012-Ohio-5699, ¶ 28. "'The defendant bears the burden of establishing entitlement to the protection provided by R.C. 2941.25.'" *Id.* at ¶ 86, quoting *State v. Davids*, 2022-Ohio-2272, ¶ 43 (8th Dist.).

### 2. Merger of Offenses

{¶ 37} R.C. 2941.25 governs whether offenses are subject to merger and states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 38} Under this statute, courts will consider three separate factors to determine whether the offenses are subject to merger: the import, the conduct, and the animus. *State v. Bey*, 2025-Ohio-740, ¶ 86 (8th Dist.), citing *State v. Ruff*, 2015-Ohio-995, paragraph one and three of the syllabus. Specifically, "offenses do not merge, and a defendant may be convicted of and sentenced for multiple offenses if

any one of the following is true: (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id*., citing *Ruff* at paragraph three of the syllabus.

{¶ 39} Offenses are dissimilar in import or significance within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. Offenses are committed separately within the meaning of R.C. 2941.25(B) if "'one offense was complete before the other offense occurred . . . notwithstanding their proximity in time and that one [offense] was committed in order to commit the other.'" *State v. Woodard*, 2022-Ohio-3081, ¶ 38 (2d Dist.), quoting *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.). Thus, "'when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts.'" *Woodard* at ¶ 38, quoting *State v. Mooty*, 2014-Ohio-733, ¶ 49 (2d Dist.). For purposes of R.C. 2941.25(B), animus has been defined as '"purpose or more properly, immediate motive."' *State v. Priest*, 2018-Ohio-5355, ¶ 12 (8th Dist.), quoting *State v. Bailey*, 2014-Ohio-4684, ¶ 34 (8th Dist.). "'If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses.'" *State v. Lane*, 2014-Ohio-562, ¶ 12 (12th Dist.), quoting *State v. Lewis*, 2012-Ohio-885, ¶ 13 (12th Dist.).

### 3. Analysis

{¶ 40} The record demonstrates that two separate offenses of failure to comply were committed by Akins. First, he failed to yield to Officer Payne's attempt to initiate a traffic stop, ran a red light, and collided with C.T., causing her to suffer serious injuries. And second, after Akins failed to stop after this accident, Officer O'Donnell initiated a separate attempt to make a traffic stop. Akins willfully fled from this attempt causing the second accident and resulting in serious injuries to Uncle.

{¶ 41} Based on these facts, we conclude that these offenses were committed separately because Akins's commission of the first failure to comply was complete prior to the commission of his second failure to comply. Additionally, these offenses were of dissimilar import and significance because each failure-to-comply offense involved separate victims and separate identifiable harm from each offense. Thus, the trial court did not err in refusing to merge Akins's conviction for failure to comply under Count 8 of the indictment, relating to his failure to yield to Officer O'Donnell, with his failure-to-comply convictions under Counts 1 and 2 of the indictment, relating to his failure to yield to Officer Payne. This assignment of error is overruled.

### D. Assignment of Error No. 4 – Denial of Akins's Motion for Mistrial

{¶ 42} In assignment of error No. 4, Akins alleges that the trial court abused its discretion in denying his motion for a mistrial based on the State's failure to

produce the data contained in the EDR from his vehicle that he contends may contain potentially exculpatory evidence that he was not speeding at the time of the accidents. Akins claims that the State's failure to produce the EDR violated his right to due process as set forth in *Brady,* 373 U.S. 83, and its progeny. We overrule Akins's fourth assignment of error because the EDR does not constitute material evidence within the meaning of *Brady.* Rather, because the EDR is only possibly relevant evidence, Akins must show that the State's failure to preserve this evidence was done in bad faith. In this case, there is no evidence in the record that the State acted in bad faith. Therefore, Akins's right to due process was not violated and the trial court correctly denied his motion for a mistrial.

### 1. Standard of Review

{¶ 43} Generally, "[a] reviewing court will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." *State v. Smith*, 2018-Ohio-4691, ¶ 24 (2d Dist.), citing *State v. LaMar*, 2002-Ohio-2128, ¶ 82. However, "a trial court's ruling on a motion for new trial claiming a *Brady* violation should be reviewed using 'a due process analysis rather than an abuse of discretion test because the issue on review concern[s] [the defendant's] due process right to a fair trial, namely the suppression by the prosecution of evidence favorable to [the defendant].'" *Id.*, quoting *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988). Accordingly, we review de novo a trial court's ruling on a motion for new trial alleging a *Brady* violation. *State v. Azali*, 2023-Ohio-4643, ¶ 60 (8th Dist.). "'Under a de novo standard of review, we give no deference to a

trial court's decision.'" *State v. Buehner*, 2021-Ohio-4435, ¶ 43 (8th Dist.), quoting *Brownlee v. Cleveland Clinic Found.*, 2012-Ohio-2212, ¶ 9 (8th Dist.). "When asserting a *Brady* violation, the defendant bears the burden of demonstrating that his or her due process rights were violated." *State v. Gillis*, 2024-Ohio-726, ¶ 62 (8th Dist.), citing *State v. Glover*, 2016-Ohio-2833, ¶ 35 (8th Dist.).

### 2. *Brady* Violation

{¶ 44} In general, "the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a state disclose material evidence favorable to the defendant and prohibits the state from failing to preserve such evidence or destroying such evidence in bad faith." *State v. Young*, 2021-Ohio-2541, ¶ 103 (12th Dist.), citing *Brady* at 87; *see also Arizona v. Youngblood*, 488 U.S. 51 (1988). "Due process requires that the state provide criminal defendants with any evidence that is material to either their guilt or punishment." *State v. McGuire*, 2018-Ohio-1390, ¶ 17 (8th Dist.). To establish a "*Brady* violation," a defendant must show that "'(1) the evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice ensued.'" *Id.* at ¶ 18, quoting *State v. Allen,* 2016-Ohio-7045, ¶ 12 (8th Dist.).

{¶ 45} "Exculpatory evidence is defined as evidence favorable to the accused, which "'if disclosed and used effectively * * * , may make the difference between conviction and acquittal.'"" *Buehner* at ¶ 39, quoting *State v. Newell*, 2019-Ohio-976, ¶ 36, quoting *State v. Braun*, 2009-Ohio-4875, ¶ 70 (8th Dist.). In turn,

evidence is considered material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *McGuire* at ¶ 17, quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Glover*, 2016-Ohio-2833, ¶ 33 (8th Dist.).

{¶ 46} That being said, "the materiality standard is not met by the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial." *State v. Hughes*, 1993 Ohio App. LEXIS 5277, * 24 (8th Dist. Nov. 4, 1993). "Courts have consistently rejected *Brady* claims that are too speculative, requiring defendants to substantiate claims that the evidence in question was favorable and material." *McGuire* at ¶ 28. "'The possibility that evidence could have exculpated the defendant if preserved or tested is not enough to satisfy the standard of constitutional materiality.'" *Azali,* 2023-Ohio-4643, at ¶ 62 (8th Dist.), quoting *State v. Spencer*, 2018-Ohio-5351, ¶ 34 (8th Dist.). In summary, Ohio law establishes that if it is unknown whether the evidence at issue is exculpatory (or favorable to the defendant), the evidence is not "material" within the meaning of *Brady. See, e.g., Azali* at ¶ 69-70 (*Brady* claim denied to unknown contents of lost video footage); *McGuire* at ¶ 27-30 (*Brady* claim denied to unknown contents of missing body-cam video); *Cleveland v. Townsend*, 2013-Ohio-5421, ¶ 22, 25 (8th Dist.) (*Brady* claim denied to unknown contents of destroyed video ); *State v. Durham*, 2010-Ohio-1416, ¶ 21 (8th Dist.) (*Brady* claim denied to unknown contents of missing videotape). Based on the foregoing, a defendant's due-process

rights are violated when the State fails to disclose or preserve material evidence and the burden is on the defendant to substantiate claims that the evidence in question is material to his defense.

{¶ 47} In turn, "where the evidence is not material but only potentially useful, the defendant must show bad faith on the part of the state to demonstrate a due process violation." *Azali* at ¶ 63, quoting *State v. Geeslin*, 2007-Ohio-5239, ¶ 10. Bad faith

> implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

(Cleaned up.) *State v. Powell*, 2012-Ohio-2577, ¶ 81.

{¶ 48} In summary, the State has a duty to disclose and preserve material evidence and the failure to do so is a violation of a defendant's due-process rights. In contrast, if evidence is only potentially useful, the State's failure to disclose or preserve the evidence is not a violation of a defendant's due-process rights unless bad faith on the part of the State can be demonstrated by the defendant.

### 3. Analysis

{¶ 49} During trial, the State represented to the court that it did not have the EDR in its possession. The State also did not identify the EDR as evidence it possessed in any of its discovery responses. Detective Sean Riley testified that he did not know if the EDR existed or if any data was ever retrieved from it. While he acknowledged that he was the lead detective on this matter, Detective Riley was

unable to state whether the EDR or its data was ever gathered by the State or, specifically, by the accident investigative unit. Thus, we are confronted with a failure-to-preserve-evidence scenario by the State.

{¶ 50} The next question before us is whether this evidence is material within the meaning of *Brady* and its progeny. We find that it is not. The record demonstrates that the contents of the EDR are unknown. In other words, we do not know if the data will show that Akins was speeding or if he was not speeding. Neither party knows what the data from the EDR will reveal. More specifically, Akins cannot establish that this evidence is exculpatory or favorable to his defense. As set forth above, this type of evidence is too speculative to constitute "material" evidence and Akins's right to due process has not been violated at this point in our analysis.

{¶ 51} The EDR does, however, constitute potentially useful evidence. Akins's due-process rights may still be violated by the State's failure to preserve potentially useful evidence if the State acted in bad faith. But here, there is no evidence in the record demonstrating that the State acted in bad faith, and, consequently, Akins's right to due process was not violated by the State's failure to preserve the data from the EDR. Accordingly, we find that the trial court did not err in denying his motion for a mistrial. Assignment of error No. 4 is not well taken.

### E. Assignment of Error No. 5 – Consecutive Sentences

{¶ 52} In his last assignment of error, Akins asserts that the trial court erred by imposing consecutive sentences for his two aggravated-vehicular-assault convictions. Akins argues that the trial court's decision to impose consecutive

sentences is not clearly and convincingly supported by the record and, further, that the trial court failed to take into consideration the factors outlined in R.C. 2929.12(C)(4) prior to imposing this sentence. After our review, we cannot clearly and convincingly find that the record does not support the trial court's findings and, further, we find that the trial court considered all required factors. Therefore, we overrule Akins's fifth assignment of error.

### 1. Standard of Review

{¶ 53} R.C. 2953.08(G)(2) sets forth our standard of review for felony sentences. *State v. Clemmons*, 2023-Ohio-4312, ¶ 29 (8th Dist.).

> Under R.C. 2953.08(G)(2), an appellate court may increase, reduce or otherwise modify a sentence or vacate a sentence and remand for resentencing if it "clearly and convincingly" finds that (1) the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4) or 2929.20(l) or (2) the sentence is "otherwise contrary to law."

*Id.* Specifically, we review "consecutive sentences using a 'clear and convincing standard.'" *State v. Reed*, 2020-Ohio-1610, ¶ 17 (8th Dist.), quoting *State v. Allison*, 2017-Ohio-7720, ¶ 8 (8th Dist.). Clear and convincing evidence "is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Sumlin*, 2025-Ohio-550, ¶ 16 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## 2. Consecutive Sentences Under R.C. 2929.14(C)(4)

**{¶ 54}** "There is a presumption under Ohio's sentencing scheme that a defendant's multiple prison sentences will be served concurrently, unless the sentencing court makes findings supporting the imposition of consecutive sentences under R.C. 2929.14(C)(4)." *State v. Littlejohn*, 2024-Ohio-4797, ¶ 29 (8th Dist.). Pursuant to R.C. 2929.41(A), a trial court must find that the consecutive sentences are both (1) "necessary to protect the public from future crime or to punish the offender"; and (2) "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.*; *accord Sumlin* at ¶ 14. Additionally, the trial court must find that at least one of these three factors apply:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.* Under this statute, "it is well established" that consecutive sentences are appropriate where there are multiple victims in order to "hold the defendant accountable for crimes committed against each victim." *State v. Thome*, 2017-Ohio-963, ¶ 16 (8th Dist.); *State v. Shephard*, 2024-Ohio-2010, ¶ 34 (8th Dist.). Ohio

case law has also "clearly established that a defendant's juvenile record may be considered as part of an offender's criminal conduct under R.C. 2929.14(C)(4) for the purposes of determining whether to impose consecutive sentences." *State v. Riley*, 2025-Ohio-3276, ¶ 15 (8th Dist.), citing *State v. Vers*, 2022-Ohio-4083, ¶ 18 (8th Dist.).

{¶ 55} Also, "[w]hen imposing consecutive sentences, the trial court is not required to recite the statutory language nor is it required to state the reasons that support its findings where such support may be found in the record." *Sumlin* at ¶ 15, citing *State v. Percy*, 2024-Ohio-664, ¶ 10 (8th Dist.). Compliance with R.C. 2929.14(C)(4) only "requires the trial court to make these statutory findings at the sentencing hearing, where 'the [trial] court must note that it engaged in the analysis and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Reed* at ¶ 19, quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326 (1999). "A statement in the trial court's sentencing entry that it considered all the required factors of law is sufficient to fulfill the trial court's obligation under the sentencing statutes." *State v. Martin,* 2025-Ohio-744, ¶ 10 (8th Dist.), citing *State v. Riemer*, 2021-Ohio-4122, ¶ 18 (8th Dist.).

{¶ 56} Based on the foregoing, a defendant may challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the findings required by R.C. 2929.14(C)(4). *Clemmons*, 2023-Ohio-4312, at ¶ 31 (8th Dist.);

R.C. 2953.08(G)(2)(b).  Second, the defendant can argue that the record "clearly and convincingly" does not support the court's findings made pursuant to R.C. 2929.14(C)(4).  *Id.*; R.C. 2953.08(G)(2)(a).

### 3. Analysis

{¶ 57} Akins does not dispute that the trial court made the required findings under R.C. 2929.14(C)(4).  Rather, Akins argues that the record "clearly and convincingly" does not support these findings.  Thus, we will address whether this court can clearly and convincingly find that the record does not support the trial court's findings.

{¶ 58} Regarding the trial court's finding that consecutive sentences were necessary to protect the public from future crime or punish the defendant, the record demonstrates that Akins had a juvenile criminal record starting in 2015 involving at least two violent crimes.  The record also demonstrates the trial court's concern regarding Akins's subsequent arrest for failure to comply under even more dangerous circumstances – traveling at 79 m.p.h. on the interstate, swerving left of center, and failing to stop when officers attempted to use strip spikes before crashing and fleeing on foot.  This failure to comply occurred after Akins had committed the offenses involved in this matter that resulted in the severe and permanent injuries to Uncle.  Based on this evidence, we cannot  clearly and convincingly find that the record does not support the trial court's finding that the imposition of consecutive sentences is necessary to protect the public and to punish Akins under R.C. 2929.14(C)(4).  We also cannot clearly and convincingly find that this evidence,

as well as the severe and permanent injuries Akins's conduct caused Uncle and C.T., does not support the trial court's finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public.

{¶ 59} We also cannot clearly and convincingly find that the record does not support the trial court's finding that Akins committed one or more multiple offenses as part of one or more courses of conduct as required by R.C. 2929.14(C)(4)(b). Akins was convicted of multiple offenses committed as part of multiple courses of conduct. The first course of conduct is Akins's initial failure-to-comply conviction relating to Officer Payne's attempt to make a traffic stop. This course of conduct culminated in the accident with C.T. resulting in her serious injuries and Akins's first aggravated-vehicular-assault conviction. The second course of conduct is Akins's failure-to-comply conviction relating to Officer O'Donnell's attempt to initiate a traffic stop after his failure to stop after his accident with C.T. This course of conduct resulted in the second accident and the serious and permanent injuries to Uncle as well as Akins's second conviction for aggravated vehicular assault. On these grounds, we cannot clearly and convincingly find that the record does not support the trial court's finding that Akins committed one or more multiple offenses as part of one or more courses of conduct satisfying R.C. 2929.14(C)(4)(b).

{¶ 60} Moreover, the harm caused to both C.T. and Uncle by Akins's actions justify the imposition of consecutive sentences under R.C. 2929.14(C)(4)(b). Both C.T. and Uncle suffered serious spinal injuries because of Akins's misconduct, and

Uncle is likely to remain paralyzed for the rest of his life. The record demonstrates that this life-altering diagnosis has caused Uncle severe mental and physical harm. The record demonstrates the significant struggles that Uncle has had, and continues to face, since the accident.

{¶ 61} Also, C.T., who was 71 years old at the time, had to endure months of physical therapy to rehabilitate her fractured spine and sprained knee. Her recovery was made more difficult because she lived in a multistory home and had difficulty using the stairs. On these grounds, we cannot clearly and convincingly find that the record does not support the trial court's finding that the harm caused by Akins's multiple offenses was so great that no single prison term would adequately reflect the seriousness of Akins's conduct under R.C. 2929.14(C)(4)(b).

{¶ 62} Lastly, the record demonstrates that the trial court considered all the statutory factors required by law. The trial court need only state that it considered all required factors of the law in making its sentencing determination. The trial court is not required to expressly state the reasons that support its findings where such support may be found in the record. Accordingly, based on our review of the record, we cannot clearly and convincingly find that the record does not support the trial court's imposition of consecutive sentences, and we also find that the trial court engaged in the correct statutory analysis required under R.C. 2929.11, 2929.12, and 2929.14(C)(4). Akins's fifth assignment of error is overruled.

{¶ 63} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

LISA B. FORBES, J., and
DEENA R. CALABRESE, J., CONCUR